DECISION
This matter is before this Court pursuant to DePasquale Building and Realty Company's ("DePasquale") motion to confirm an arbitration award granted in its favor and against the Rhode Island Board of Governors for Higher Education ("BOG") on November 2, 2007 as well as DePasquale's petition for other relief. In its motion to confirm, DePasquale claims that the Arbitrator had the authority to void the parties' contract as against public policy and to award it consequential damages as a result of BOG's material breaches. BOG responded by objecting to DePasquale's motion for confirmation and moving to vacate the Arbitrator's Award on the grounds that the Arbitrator had no authority to void the contract, to award consequential damages to DePasquale in light of the parties' waiver of such damages, or to award damages to Delta Mechanical Contractors ("Delta"), DePasquale's subcontractor, in violation of the Severin
doctrine. For the reasons set forth in this Decision, this Court vacates the Arbitration Award in part and confirms it in part.
 I. FACTS AND TRAVEL
The facts relevant to this Court's determination extend over 100 pages of briefing *Page 2 
by all parties. DePasquale and BOG entered into a Standard Form of American Institute Contract, A101, which incorporated by reference in the contract the Standard Form of General Conditions, AIA-A201. BOG hired DePasquale to be the general contractor for the construction of the Community College of Rhode Island ("CCRI") facility in Newport, Rhode Island. Subsequently, a contract dispute arose between DePasquale and BOG. As the parties had omitted the Standard American Arbitration Association clause from the contract, they agreed that the statutory procedures contained in the Public Works Arbitration Act ("PWAA"), G.L. 1956 § 37-16-1, et seq., would apply to their dispute.
The contract contained a clause limiting DePasquale's consequential damages to "anticipated profit arising directly from the work," while excluding loss of profit. In addition, the contract provided for liquidated damages to BOG in the event of a breach by DePasquale. Section 4.3.10 of the contract, entitled "Claims for Consequential Damages," states:
 The Contractor and Owner waive Claims against each other for consequential damages arising out of or relating to this Contract. This mutual waiver includes:
 .1 damages incurred by the Owner for rental expenses, for losses, of use, income, profit, financing, business and reputation, and for loss of management or employee productivity or of the services of such persons; and
 .2 damages incurred by the Contractor for principal office expenses including the compensation of personnel stationed there, for losses of financing, business and reputation, and for loss of profit except anticipated profit arising directly from the Work.
 This mutual waiver is applicable, without limitation, to all consequential damages due to either party's termination in accordance with Article 14. Nothing contained in this Subparagraph 4.3.10 shall be deemed to preclude an award of liquidated direct damages, when applicable, in accordance with the requirements of the Contract Documents.
Pursuant to the PWAA, DePasquale submitted its written demand for damages *Page 3 
against BOG to arbitration, alleging breach of contract, fraud, bad faith, and intentional misconduct. BOG filed a counterclaim for liquidated damages caused by alleged project delays. DePasquale also filed a motion to join its subcontractor, Delta, to whom it owed monies, as a party to the proceedings. The Arbitrator granted that motion.
On November 2, 2007, after lengthy discovery disputes, more than 18 hearings-which commenced on January 29, 2007 and concluded on May 23, 2007 — and review of a voluminous record comprised of numerous exhibits, affidavits, and memoranda, the Arbitrator issued a written decision in which he awarded $3,158,708 in contract damages to DePasquale and $155,000 to Delta. In rendering his decision, the Arbitrator did not find any evidence of fraud, bad faith, or intentional misconduct on the part of BOG and thus rejected those claims of DePasquale. Nonetheless, he voided the contract as against public policy for lack of basic fairness, finding that it was an adhesion contract that limited consequential damages to DePasquale while providing for liquidated damages to BOG. In the alternative, the Arbitrator found that BOG's deliberate acts of withholding two (2) progress payments totaling $327,000 in the latter stages of contract performance were unlawful and constituted material breaches that voided the contract. In assessing damages to be awarded to DePasquale, the Arbitrator accepted the total cost method as the "only practical and fairest approach" and included in his award to DePasquale lost profits and lost opportunity to be paid by BOG. The Arbitrator rejected the applicability of the Equal Access to Justice Act, G.L. 1956 § 42-92-1, and thus refused to award DePasquale attorney's fees. Instead, the Arbitrator sanctioned BOG and ordered it to pay $7,500 for failure to make timely discovery. As a result of voiding the contract as against public policy, the Arbitrator denied BOG's counterclaim for liquidated damages. *Page 4 
On November 29, 2007, DePasquale filed a timely motion with this Court to confirm the Arbitration Award and enter judgment thereon, pursuant to G.L. 1956 § 37-16-17. In addition, DePasquale seeks an award of attorney's fees and other sanctions against BOG, pursuant to G.L. 1956 §9-29-21 or G.L. 1956 § 42-92-3, for objecting to confirmation of the Arbitrator's Award and refusing prompt payment of that award. Further, DePasquale seeks prejudgment interest at the statutory rate to run from the time the dispute began in September 2005 or, in the alternative, from the date of the Arbitrator's Award in November 2007.
In opposition to DePasquale's motion to confirm the Arbitration Award, BOG filed a motion to vacate that award on December 10, 2007. BOG submits that: (1) the Arbitrator had no authority to void the contract; (2) the Arbitrator awarded consequential damages despite the parties' contractual waiver of such damages; and (3) the Arbitrator awarded a sum to Delta, the subcontractor, in violation of the Severin doctrine.
 II. STANDARD OF REVIEW
It is well-settled that this Court has limited authority to review an arbitration award. Rhode Island Council 94, AFSCME, AFL-CIO v. State,714 A.2d 584, 587 (R.I. 1998). Section 37-16-18 of the PWAA sets forth the narrow bases upon which a court may vacate an arbitration award:
 (1) When the award was procured by fraud.
 (2) Where the arbitrator or arbitrators exceeded their powers, or so imperfectly executed them, that a mutual, final, and definite award upon the subject matter submitted was not made.
 (3) If there was no valid contract, and the objection has been raised under the conditions set forth in § 37-16-13. *Page 5 
As a general rule, when a party claims that an arbitrator has exceeded his or her authority, "the claimant bears the burden of proving this contention, and every reasonable presumption in favor of the award will be made." Coventry Teachers' Alliance v. Coventry School Comm.,417 A.2d 886, 888 (R.I. 1980). Notwithstanding the limited power of this Court to review an arbitration award, however, § 37-16-18 makes clear that "[a]n arbitration award should be vacated if the arbitrator has exceeded his or her powers in making the award." State D.C.Y.F. v. R.I.Council 94, 713 A.2d 1250, 1253-54 (R.I. 1998). An arbitrator exceeds his or her powers when he or she renders an award that "manifestly disregards a contractual provision or yields an irrational result." Rhode IslandCouncil 94, 714 A.2d at 588.[1] An award will be deemed "ultra vires" if it does not "draw its essence from the agreement, if it [is] not based upon a passably plausible interpretation thereof, if it manifestly disregard[s] a contractual provision, or if it reache[s] an irrational result." State D.C.Y.F., 713 A.2d at 1253.[2] An arbitrator also may exceed his or her powers by deciding issues that the parties to the arbitration have not raised. Coventry Teachers' Alliance, 417 A.2d at 888. *Page 6 
 III. ANALYSIS A. Did the Arbitrator Exceed His Powers By Voiding theContract?
BOG argues that the Arbitrator exceeded his powers by deciding issues that neither party raised or submitted to him. BOG points out that the issue of whether the contract was one of adhesion and void as against public policy for lack of basic fairness stemming from the presence of the damage limitation and liquidated damages clauses was not submitted to arbitration by either of the parties. Since the Arbitrator is limited by statute to deciding only those issues that the parties to the controversy assert, BOG contends that the portion of the Arbitrator's Award that voids the contract in its entirety must be vacated.
DePasquale counters by referring this Court to the arguments in its Post-Hearing Brief. It alleges that it did seek contract invalidation as part of its request for relief at arbitration and that the Arbitrator did not exceed his arbitral authority in deciding to void the contract as against public policy. DePasquale relies on caselaw, the PWAA statutory arbitration clause, its arbitration demand and claim, and its repeated arbitration submissions that requested invalidation of the contract's damage limitation clause to defeat BOG's claim that the Arbitrator exceeded his authority in rendering the Award in this case.
In deciding whether an arbitrator has exceeded his or her powers by ruling on issues not submitted to arbitration, courts need only examine the submission and the award to determine whether the award conforms to the submission. Coventry Teachers' *Page 7 Alliance, 417 A.2d at 888.[3] Mindful of this authority, this Court must begin by juxtaposing DePasquale's submissions to arbitration against the Arbitrator's Award to determine if DePasquale raised the issue of the validity and enforceability of the contract as a whole.
In its claims to BOG dated February 3, 2006, and forwarded to the Arbitrator on August 16, 2006, DePasquale states, in relevant part, as follows:
 CCRI's unreasonable . . . contracting abuses void[] any otherwise operative limitation on [DePasquale]'s right to recover all categories of its resulting damages. . . . When there is a such a core material breach, just as the contractor's further performance obligations defined by the breached contract are invalidated, so too does the owner's breach likewise invalidate any otherwise operative contract limitation on the recovery of the non-breaching, innocent contractor's demonstrable resulting damages. . . .CCRI's breaches circumscribe and invalidate any otherwise operative AIA 4.3.10 restriction on the AIA listed consequential damages.[4]
(Emphasis added). The relevant language in this claim demonstrates that the issue before the Arbitrator was the validity of the limitation or restriction on DePasquale's right to recover its resulting damages, in light of BOG's alleged breach of contract, but not the validity of the contract itself. Nowhere in this claim does DePasquale assert that the *Page 8 
contract as a whole is void as against public policy or on any other grounds. In fact, throughout its 47-page claim, DePasquale makes repeated statements indicating that BOG materially breached various contract provisions and thus DePasquale is entitled to resulting damages, including lost profits and consequential damages, arising out of that contract.[5] Moreover, even if DePasquale had submitted to arbitration the issue of whether its contract with BOG was an adhesion contract and thus void as against public policy, it is not clear to this Court how DePasquale then could seek contractual relief under the very contract that it suggests is void.
DePasquale also suggests that the arguments it raised in its Post-Hearing Brief support the Arbitrator's decision to invalidate the contract in its entirety. (See DBR Ex. 4 at 62-71.) There is no indication in its memorandum, however, that DePasquale sought to invalidate the contract as a whole. Instead, DePasquale repeatedly refers to the boilerplate damage limitation as being null and void based upon CCRI's material breaches and bad faith course of conduct.[6] Indeed, DePasquale argued in its Post-Hearing Brief that CCRI's multiple breaches were so extreme and comprehensive that, as *Page 9 
a matter of law, CCRI must be held to have repudiated the contract in bad faith and that CCRI's proven fraud in the inducement vitiates the parties' contract of adhesion.[7] Additionally, DePasquale's Proposed Form of Award at paragraph 19 alleges: "To the extent that the Defendant's fraud does not vitiate the parties' contract, a contract of adhesion, then to that extent Defendant's multiple breaches of the parties' Contract, and Defendant's bad faith invalidate any damageslimitations clauses in that Contract." (Emphasis added). The issues DePasquale submitted to arbitration thus included whether BOG's fraud vitiated the parties' contract or, in the alternative, whether BOG's material breaches invalidated the damages limitation clause within that contract; those issues did not include the question of whether the contract itself was void as against public policy.
A determination that BOG/CCRI repudiated the contract, therefore, would have to have been premised on a finding that it acted fraudulently and in bad faith in its dealings with DePasquale. After finding no such fraud or bad faith on the part of BOG, the Arbitrator nonetheless characterized the parties' agreement as an adhesion contract and declared it void as against public policy because it restricted allowable damages to DePasquale while providing liquidated damages to BOG. He described the liquidated damages as "poorly disguised penalties that are supposed to be prohibited by law." (DBR Ex. 1 at 2.)
This issue, however, was never raised by the parties. Once the Arbitrator determined that there was no fraud or bad faith on the part of BOG, his arbitral power *Page 10 
was limited to deciding the issues presented to him by the parties, namely, the validity of the contractual damage limitation provision as a result of BOG's alleged breach of contract. Consequently, the Arbitrator exceeded his power by declaring the contract void as against public policy — an issue not raised by the parties or subject to arbitration.[8]
This Court reaches this conclusion, mindful of the Rhode Island Supreme Court's decision in Feibelman v. F.O., Inc., 604 A.2d 344, 345 (R.I. 1992), upon which DePasquale relies in seeking confirmation of the Award in this case. In Feibelman, the Court confirmed an arbitration award in which an arbitrator invalidated a contract's non-compete clause even though the award provided no explanation for that ruling. Id. Unlike this case, however, the arbitrator in Feibelman only invalidated a contract provision but did not void the entire contract. Feibelman is thus distinguishable from the case at bar.[9] While the Supreme Court inFeibelman made clear that every cognizable presumption must be made in favor of an award, the Court also directed that an award should be vacated if an arbitrator exceeds his or her powers by ruling on issues that the parties have not submitted to arbitration. Coventry Teachers'Alliance, 417 A.2d 888-89.[10] *Page 11 
Even assuming, arguendo, that the parties had raised the issues ultimately decided by the Arbitrator or that he had the authority to reach those issues in his decision, this Court nonetheless finds that the Arbitrator exceeded his power when he rendered an award that manifestly disregarded "contractual provision[s] [and] yield[ed] an irrational result." Rhode Island Council 94, 714 A.2d at 588.[11]
Notwithstanding DePasquale's assertion that the Arbitrator's Award was not based on the existence of the damages limitation clause in the contract, the Award itself belies this claim. The Arbitrator held:
 Even a cursory examination of the contract in issue reveals an intentional effort to restore to the state . . . the benefit of Sovereign Immunity by restricting allowable damages while asserting a right to so-called "liquidated damages" — which are poorly disguised penalties that are supposed to be prohibited by law. The contract is in fact a contract of adhesion and found to be void as being in violation of public policy for lack of basic fairness.
This holding makes clear that one of the bases upon which the Arbitrator invalidated the contract was the presence of the liquidated damages and damage limitation clauses contained in the parties' agreement. *Page 12 
This holding, however, does not accurately reflect the State of Rhode Island law. In Psaty Fuhrman, Inc. v. Housing Authority of City ofProvidence — a case remarkably similar to the case at bar — the Supreme Court addressed a construction contract that, like the contract at issue here, contained a liquidated damages provision and a no-damages clause.76 R.I. 87, 93, 68 A.2d 32, 36 (R.I. 1949). It refused to find either provision unenforceable as a matter of law.
The Court found that no-damage clauses, which are most frequently found in construction contracts, "are not ordinarily in violation of law." 76 R.I. at 93, 68 A.2d at 36. With respect to the provision allowing for liquidated damages for delay in contract performance, the Court held that such a provision is enforceable if the delay is not due, in whole or in part, to the fault of the party claiming the benefit of the provision and if the amount fixed as compensation is fair and reasonable. Id. at 98-99, 68 A.2d at 38. The Court explained that where damages are uncertain in nature or amount or are difficult to ascertain, a liquidated damage provision serves the practical purpose of fixing a standard by which to determine the amount to be paid as compensation in the event of a breach. Id. Not only did the Court refuse to find either the no-damages clause or the liquidated damages provision unenforceableper se, but there is also no indication that it considered the presence of both provisions in the contract as grounds for rendering the entire agreement void as against public policy. Id. Furthermore, DePasquale has offered no legal authority to support a ruling by this Court that damage limitation provisions, either independently or in conjunction with liquidated damages clauses, are per se unenforceable or that the presence of these provisions in a contract renders the entire agreement void as against public policy. *Page 13 
The Arbitration Award here demonstrates that the Arbitrator concluded, in direct contravention of Psaty Fuhrman, that the restriction on allowable damages to DePasquale and the provision for liquidated damages to BOG were unenforceable as a matter of law. There is no evidence in the Award itself or from the Arbitrator's findings that he conducted any analysis of the damage limitation or liquidated damages provisions in the contract in the context of the facts of the case to support his determination that they were unenforceable. Consequently, in deciding to void the entire contract because of the presence of the damages clauses, the Arbitrator exceeded his powers by manifestly disregarding contractual provisions that the parties had accepted when they formed their agreement. Rhode Island Council 94, 714 A.2d at 588; see also Psaty Fuhrman, 76 R.I. at 93, 68 A.2d at 36 ("The parties to a contract are free to agree upon any terms that are not illegal.").
Furthermore, despite the mandate of § 37-16-2 of the PWAA that "[an] arbitrator shall provide a written explanation of the reasoning for the award" — a requirement of which the Arbitrator was mindful as evidenced by his citation to that provision in the Award — the Award lacked the requisite explanation. He provided no legal grounds for his decision to void an entire contract as against public policy on the basis of the presence of damage limitation and liquidated damages clauses, even though he was required to do so under the PWAA. This dearth of legal reasoning may well be explained by the absence of law to substantiate his findings. Had the Arbitrator cited to the law applicable to the issues in this case, including the law that the parties briefed for his consideration, the irrationality of his decision would have been manifest.[12] Instead, he exceeded his *Page 14 
power by failing to provide the requisite explanation for the Award, rendering, instead, a conclusory decision unfounded in law.[13] *Page 15 
In addition, the Arbitrator seemed to acknowledge readily that the legality of his Award could be questioned. In the Award, he openly recognized the prospect of an appeal of his legal conclusions and thus buttressed his ruling with an alternative legal conclusion, stating:
 Lest BOG seize on this finding as grounds for an appeal, it is further found that the BOG's deliberate withholding of two (2) progress payments totaling $327,000 in the latter stages of contract performance was unlawful. . . .BOG's failure to pay did constitute under well established law a material breach fatal to the contract, and subsequently, to DePasquale.
(DBR Ex. 1 at 1-2) (emphasis added).
Yet, the Arbitrator exceeded his powers as well in rendering his alternative holding. His determination that BOG's withholding of progress payments due DePasquale constituted a material breach that invalidated the parties' contract also "yields an irrational result."Rhode Island Council 94, 714 A.2d at 588. By law, a party's failure to make contract payments constitutes a breach of contract that excuses further performance by the non-breaching party and entitles the injured party to bring an action based on the fair and reasonable value of the work done; however, that breach does not invalidate the agreement as a whole. See Aiello Construction, Inc. v. Nationwide Tractor TrailerTraining and Placement Corp., 122 R.I. 861, 864-65, 413 A.2d 85, 87
(1980) (finding that where an owner fails to pay an installment due on a construction contract, such owner is guilty of a breach that goes to the essence of the contract and that may justify the contractor in refusing to continue the work and in bringing an action on the contract for damages for its breach or quantum meruit for reasonable compensation *Page 16 
for what the contractor has done).[14]
As the Arbitrator here found that BOG's conduct did not constitute fraud, bad faith or intentional misconduct, his decision to void the entire contract on the basis of BOG's non-payment of progress payments was wrong as a matter of law and yields an irrational result. The remedy for BOG's material breach was to award DePasquale reasonable compensation for the work it performed, not to void the entire agreement, especially where the parties did not submit this issue to arbitration. See AielloConstruction, Inc., 122 R.I. at 865, 413 A.2d at 87.[15] DePasquale recognized this fact by relying on the contract in requesting contractual relief for BOG's breaches, including consequential damages such as lost profits. (Decision, at 10 n. 7.)[16] Indeed, even the Arbitrator characterized the Award of $3,158,708 to DePasquale as "construction contract damages," see DBR Ex. 1 at 6, which indicates, contrary to his decision to invalidate the contract (and its damage limitation and liquidated damages provisions) for breach, that the relief that he granted DePasquale arose, at least in part, from the contract. His decision, therefore, to void the contract, while awarding damages arising from it, yields an "irrational result." Rhode Island Council 94,714 A.2d at 588.
Moreover, the contract at issue in this case is a standard form of construction *Page 17 
contract with widespread usage in the industry.[17] To invalidate it based on its damages limitation and liquidated damages provisions, therefore, would be to turn this industry practice on its head. What is more, DePasquale is not a commercial novice — it is a sophisticated construction company with years of experience in the construction field.Psaty Fuhrman, 76 R.I. at 93, 68 A.2d at 35 ("Men who take million-dollar contracts for government buildings are neither unsophisticated nor careless.") (internal quotation omitted). As such, it was "free to agree upon any terms that are not illegal." Id. at 93,68 A.2d at 36. DePasquale and BOG thus knowingly and freely negotiated the inclusion and/or exclusion of all terms of the contract, including any express provisions or conditions such as the no-damages and liquidated damages clauses. To allow the Arbitrator to void their contract would be to sanction its rewriting in favor of one sophisticated party over the other.
Furthermore, even if the issue that the Arbitrator ultimately decided — namely, the validity of the contract at issue — was, in fact, raised and submitted by the parties or, alternatively, that the Arbitrator was able to reach this issue notwithstanding the fact that neither of the parties submitted it to arbitration, the Arbitrator nonetheless exceeded his power by voiding a contract which, by law, was the very source of his power to arbitrate, thereby yielding an irrational result. See Town ofSmithfield v. Local 2050, Intern. Ass'n of Firefighters, AFL-CIO, 2000 WL 1273904, at *3 (R.I.Super. 2000) ("An arbitrator's *Page 18 
authority is contractual in nature and is limited to the powers conferred in the parties [contract]") (internal quotation omitted). Rhode Island General Laws § 37-16-2(b)(2) sets forth the scope of an arbitrator's powers: "All claims, disputes, and other matters in question arising out of or relating to this contract or the performance or interpretation thereof shall be submitted to arbitration." While DePasquale argues that this is an all-encompassing arbitration clause, it is not an absolute grant of authority. Arbitration depends on the existence of a valid contract; an argument that a contract does not exist, therefore, cannot be resolved by an arbitrator. See Sphere Drake Ins. Limited v. AllAmerican Ins. Co., 256 F.3d 578, 591 (7th Cir. 2001). In this case, the Arbitrator voided the very agreement that authorized him to resolve the parties' dispute in the first place, thereby rendering the contract non-existent. In so doing, his ruling constituted an irrational invalidation of his own arbitral power.[18]
Consequently, this Court vacates the portion of the Arbitrator's Award that is based on his erroneous decision to void the contract in its entirety, namely, the award of damages in the amount of $3,158,708 to DePasquale.[19] This Court confirms the *Page 19 
Arbitrator's alternative damage award of $327,000 to DePasquale that is not based on his decision to void the contract and clearly includes contract damages arising as a result of BOG's breach.
 B. Did the Arbitrator Exceed His Power By Awarding a Sum to
 Delta in Violation of the Severin Doctrine?
BOG's final argument in support of its motion to vacate the Arbitration Award is that the Arbitrator exceeded his power by awarding $155,000 to Delta, DePasquale's subcontractor. It argues that the Award cannot stand because there was no privity between it and BOG.
After BOG and DePasquale entered into an agreement for the construction of a new CCRI campus in Newport, Rhode Island, DePasquale, in turn, entered into a subcontract with Delta for Delta to complete mechanical, fire protection, and HVAC work on the campus. Following DePasquale's dispute with BOG regarding performance of the contract between those two parties, the underlying arbitration ensued. Delta asserted claims against DePasquale and DePasquale's surety. As a result, pursuant to § 37-16-3, DePasquale moved to join Delta and Delta's claim in its arbitration with BOG to which BOG objected. At the conclusion of a lengthy discovery process involving several hearings, the Arbitrator granted DePasquale's motion to join Delta, finding that Delta was a proper party for joinder under the statute. (DBR Ex. 5.) As part of his award, the Arbitrator determined that Delta was entitled to $155,000 from BOG to satisfy the unliquidated claim that Delta asserted. Thereafter, DePasquale moved to confirm the award, and BOG objected. *Page 20 
BOG contends that the award of $155,000 to Delta is another example of the Arbitrator exceeding his authority by manifestly disregarding the law as found in Aetna Bridge Co., 795 A.2d at 524, a case in which the Supreme Court adopted the doctrine set forth in Severin v. UnitedStates, 99 Ct.Cl. 435 (1943), cert. denied, 322 U.S. 733 (1944). To support its contention, BOG relies on the language of § 37-16-3(2) and the holding in Aetna that a "pass-through" claim with no concomitant liability to the general contractor is not arbitrable pursuant to theSeverin doctrine. 795 A.2d at 524.
Section 37-16-3, entitled "Application to subcontracts" states:
 When a contract described in § 37-16-2 is in effect and any party thereto has entered into a subcontract to perform part of the work and/or furnish any materials in connection with the work described in the contract and the terms of the subcontract provide for arbitration of a dispute or claim concerning the performance or interpretation thereof, or the subcontract, expressly or by reference to the terms of the contract, provides that the parties to the subcontract shall comply with the arbitration provisions of the contract, the following shall apply when a request is made or an order of court is entered for arbitration either under the terms of the contract or subcontract.
 (1) When arbitration under the contract may adversely affect the interest of a party thereto because of the effect of an award of the arbitrator or arbitrators upon the performance or interpretation of the terms of a subcontract to which he or she is also a party, he or she may require any other party or all other parties to the subcontract to become a party or parties to the arbitration.
 (2) When a party to a subcontract makes a demand or an order of court is entered for arbitration under the terms of the subcontract which comply with the provision of this chapter, any party thereto who is also a party to the contract and whose rights under the contract may be adversely affected by the effect of an award of the arbitrator or arbitrators upon the performance or interpretation of the contract may require any other party to the contract to become a party to the arbitration. *Page 21 
BOG suggests that the Arbitrator relied on subsection two (2) in deciding to join Delta as a party to the arbitration and maintains that because Delta never demanded arbitration with DePasquale and DePasquale never demanded that BOG pay a demand filed by Delta, as required by that subsection, the Arbitrator exceeded his power in permitting joinder of Delta. BOG further suggests that this decision violated BOG's due process rights since Delta did not file any demand or claim to which DePasquale or BOG could have responded.
In the first instance, BOG's claim that the Arbitrator inappropriately joined Delta as a party to the arbitration pursuant to § 37-16-3(2) is unfounded. There is no evidence in the Arbitrator's findings that he based his decision on § 37-16-3(2). In according a presumption in favor of the award and the Arbitrator's findings, there is no evidence that the Arbitrator knew the law yet manifestly disregarded it in rendering his decision. The Arbitrator merely cited to § 37-16-3 as the authority for proper joinder of a subcontractor to an arbitration. Pursuant to subsection (1), since DePasquale was a party to both the contract with BOG and the subcontract with Delta, and since the outcome of the arbitration of DePasquale's contract with BOG could impact performance of its obligations under its agreement with Delta, Delta was clearly a proper party to be joined. § 37-16-3 (1).
BOG's reliance on Aetna Bridge Co. is also misplaced. In that case, Aetna, the general contractor, entered a contract with the State Department of Transportation ("DOT") for reconstruction of part of Route 95 in Pawtucket, Rhode Island. 795 A.2d at 518. Aetna, the general contractor, then subcontracted with several companies to perform other parts of the project, one of these companies being L.B. Foster ("Foster"). *Page 22 Id. In providing a list of its subcontractors to DOT, Aetna failed to include Foster on the list and, therefore, DOT was not aware of Aetna's subcontract with Foster. Id. at 519. After a dispute arose between Aetna and DOT, Aetna claimed that it had no liability to Foster because of their "lump-sum" payment agreement, but agreed to present Foster's claim to DOT which was later termed a "pass-through" claim. Id. DOT refused to pay, however, on the basis that it had paid Aetna in full under their contract and that it was not aware of nor privy to the relationship between Aetna and Foster. Id. The parties submitted their dispute to arbitration and after an award was rendered in favor of Aetna and confirmed by the Superior Court, DOT appealed to the Supreme Court on the basis that Aetna's claims were not arbitrable under the Severin
doctrine. Id. at 519-20.
On appeal, the Supreme Court explained that if, indeed, Aetna's claim against DOT was found to be a "pass-through" claim — namely, a claim against DOT for one of the project's subcontractors to whom Aetna had no liability and with whom DOT had no privity — then it would not be arbitrable under the Severin doctrine. 795 A.2d at 520, 524. Instead, if Aetna could demonstrate that it was liable to its subcontractor for the damages that the subcontractor sustained, then this claim would be arbitrable. Id. at 524 n. 13 (citing Department of Transportation v.Claussen Paving Co., 273 S.E.2d 161, 164 (1980)). Consequently, it was Aetna's liability to its subcontractor that was relevant to the determination of whether its claim was arbitrable — an issue the Superior Court was asked to determine on remand — and not the relationship between the subcontractor and DOT.
Similarly, here, while there may be no privity between Delta and BOG, as BOG contends, such privity is not a prerequisite to Delta's joinder under § 37-16-3 or to the *Page 23 
arbitrability of its claim. Further, since the record indicates that Delta's claim remains unliquidated, a fact which BOG does not refute, it is clear that DePasquale is liable to Delta for those unpaid damages and, therefore, the Severin doctrine does not preclude the arbitration of Delta's unliquidated claim.
With respect to BOG's assertion that Delta's last-minute joinder derived it of due process, this Court is not convinced that BOG was unaware of the existence of claims of DePasquale's subcontractor. InAetna Bridge Co., DOT argued that it did not learn of the relationship between Aetna and Foster until the final day of arbitration. On that day, DOT asserted that it learned from the testimony of Aetna's Vice President that Aetna's claim was a "pass-through" claim on behalf of Foster. Id. at 522. He testified that "Aetna had paid Foster the agreed upon `lump-sum' amount and had no outstanding liabilities with Foster."Id. He further stated that Aetna had "no pending liabilities or debts associated with its general bridge project contract with DOT." Id. These facts suggest that if, in fact, Aetna had no pending liabilities or debts with respect to the project, as its vice president testified, there would be less incentive for Aetna to disclose its relationship with Foster to DOT. Instead, if there were any claims still open and unliquidated, it is reasonable to infer that Aetna would have made it a point to inform DOT of its obligations to Foster.
Likewise, here, in light of the evidence that Delta's claim is still open and unliquidated, it is more likely than not that DePasquale would have informed BOG of the existence of this claim. In fact, the record indicates that during 2004, DePasquale continually submitted claim notices and letters in which it informed BOG that its subcontractor claims were imminent. In addition, in DePasquale's February 3, 2006 *Page 24 
contract claim and its August 2006 claim transmittal letter that it submitted to the Arbitrator, DePasquale included a summary of its alleged monetary damages. In its August 2006 letter, DePasquale enclosed an updated claim for monetary relief to replace the damage summary submitted in its February 2006 claim. In both summaries and throughout its claims, DePasquale alleged that BOG's non-payment breached its contract obligations to DePasquale and thus impacted DePasquale's subcontractors. (See DBR Ex. 2.) More specifically, in its damages summaries, DePasquale enumerates its various costs and obligations, including subcontractor claims to Delta, among others. Id.
In contrast, in Aetna Bridge Co., it was not until the final day of arbitration that DOT first learned that Aetna was not seeking any recovery from DOT to compensate Aetna but, instead, that Aetna's arbitration claim was, in reality, a "pass-through" claim whereby Aetna was seeking to obtain additional compensation for Aetna's subcontractors. 795 A.2d at 522. The Court found that, while DOT and Aetna exchanged some pre-hearing discovery materials, Aetna had not disclosed to DOT that it had subcontracted with Foster, that Foster had agreed to receive a "lump-sum" payment from Aetna for that work, or that unbeknownst to Aetna, Foster had subcontracted out some of its work. Id.
at 521. The Court determined that the necessary liquidation agreements apparently never were produced, even at the arbitration hearings, and, therefore, DOT was not able to differentiate between the various subcontracting relationships that Aetna had undertaken to complete its general contractor obligations to DOT under the bridge restoration work project. Id. Based upon Aetna's own demand for arbitration, it appeared to DOT that Aetna "merely was seeking for itself an equitable adjustment in the general contract amount to compensate Aetna for extra costs that it had incurred." Id. at 522. *Page 25 
Certainly, based on DePasquale's pre-arbitration submissions, BOG cannot claim to have been as unaware of DePasquale's subcontractor relationships and obligations as was DOT. DePasquale's documents clearly put BOG on notice that it had incurred costs due its subcontractors, including Delta, and that it intended to pursue these claims in arbitration.
A review of the record thus demonstrates that DePasquale proved that its subcontractor, Delta, sustained damages through fault of BOG and that DePasquale is responsible to Delta for those open and unliquidated damages. See Aetna Bridge Co., 795 A.2d at 524 n. 13. Further, BOG has failed to meet its burden of proving that DePasquale is not responsible for Delta's costs and bears no concomitant liability to Delta for its claims. See E.R. Mitchell Construction Co. v. Danzig, 175 F.3d 1369, 1370
(1999) (holding that it is the burden of the government to prove that the prime contractor is not responsible for the costs incurred by the subcontractor that are at issue in the pass-through suit). Consequently, this Court is satisfied that the Arbitrator did not exceed his power in joining Delta as a party to the arbitration under § 37-16-3 and in deciding the subcontractor's claim. The award to Delta, therefore, is affirmed.
 D. Attorney's Fees and Other Appropriate Sanctions
In addition to confirmation of the Arbitration Award, DePasquale also seeks a ruling by this Court that BOG stands liable for DePasquale's attorney's fees and other appropriate sanctions pursuant to § 9-29-21
and/or § 42-92-3. It argues that BOG lacks substantial justification for objecting to confirmation of the Arbitrator's Award and for *Page 26 
refusing prompt payment of that award.[20]
Section 9-29-21, entitled "Attorney or unrepresented party must sign papers-Sanctions for frivolous suits," states, in relevant part:
 The signature of an attorney or party constitutes a certificate by him or her that he or she has read the pleading, motion, or other paper; that to the best of his or her knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument . . . and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. . . . If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, may impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.
Section 42-92-3 of the Equal Access to Justice Act, entitled "Award of reasonable litigation expenses," reads, in relevant part:
 (a) Whenever the agency conducts an adjudicatory proceeding subject to this chapter, the adjudicative officer *Page 27 
shall award to a prevailing party reasonable litigation expenses incurred by the party in connection with that proceeding. The adjudicative officer will not award fees or expenses if he or she finds that the agency was substantially justified in actions leading to the proceedings and in the proceeding itself. The adjudicative officer may, at his or her discretion, deny fees or expenses if special circumstances make an award unjust.
With respect to the Equal Access to Justice Act, the Arbitrator found that the preamble does not permit application of the award of attorney's fees to state contracts.[21] It is not clear the language of the statute prohibits DePasquale's application for attorney's fees in this case. Even if this Court were to find that this interpretation constitutes a mistake of law, however, this is not a valid ground for this Court to reverse the Arbitrator's finding and vacate his decision.Purvis Systems, Inc. v. American Systems Corp., 788 A.2d at 1115. In fact, an analysis of § 42-92-3, which DePasquale cites in its memorandum, explains that an award of attorney's fees will not be made if the agency *Page 28 
was "substantially justified" in its action. In light of this Court's decision regarding DePasquale's motion to confirm and BOG's motion to vacate, it is fair to say that BOG was substantially justified in opposing DePasquale's motion to confirm and moving to vacate the Arbitration Award. BOG's objection to confirmation of the award and its motion to vacate were not frivolous nor "interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." BOG is not required, therefore, to pay DePasquale's attorney's fees nor is it subject to any other sanctions under § 9-29-21.
 E. Interest on Unpaid Progress Payments
DePasquale also petitions this Court to award it interest on the unpaid progress payments owed by BOG. Since the contract itself does not include any interest or interest restriction provision, DePasquale argues that Article 13.6.1 of Form A201 should apply, which states:
 Payments due and unpaid under the Contract Documents shall bear interest from the date payment is due at such rate as the parties may agree upon in writing or, in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.
Although the contract does not specify a contract rate for interest, DePasquale argues that it incorporates by reference the statutory rate of interest prevailing in Rhode Island, namely, 12% per annum running from September 30, 2005, when BOG first breached its contract obligation to DePasquale, to date.[22] *Page 29 
Since this Court has vacated the Arbitrator's Award of $3,158,708, inclusive of interest, it is necessary to determine DePasquale's claim for interest with respect to the new award of $327,000 representing unpaid progress payments. Having reinstated the parties' contract, this Court must give any and all unambiguous terms their "plain, ordinary, and usual meaning." Cathay Cathay, Inc. v. Vindalu, LLC, 962 A.2d 740, 746
(R.I. 2009) (quoting Rubery v. Downing Corp., 760 A.2d 945, 947 (R.I. 2000)). Having given effect to DePasquale's waiver of consequential damages as provided under the Standard Form of Contract like the one in this case, this Court would be remiss if it were to ignore the interest provision under that same contract document. Since BOG does not raise any objection to this Court's application of the statutory rate prevailing in Rhode Island to the unpaid progress payments, and since the contract itself contains no interest restrictions, this Court holds that the legal rate of 12% per annum be applied to the unpaid progress payments running from September 30, 2005, the time when the first of those payments became "due and unpaid," to the date of entry of judgment in this case. (Art. 13.6.1.)[23]
 F. Arbitrator's Award of Other Damages
In its motion to vacate, BOG does not challenge the remaining miscellaneous damages awarded by the Arbitrator. As such, this Court does not need to address those damage awards, and DePasquale's motion to confirm the miscellaneous damages that the *Page 30 
Arbitrator awarded is, therefore, granted.[24]
 CONCLUSION
This Court vacates the Arbitration Award in part and confirms it in part. The provision of the Award that awards damages to DePasquale in the amount of $3,158,708, being based on the Arbitrator's erroneous decision to void the contract in its entirety, is vacated. The provision of the Award that awards $327,000 in contract damages to DePasquale, on alternative grounds, is confirmed. The provision of the Award that denies liquidated damages to BOG is likewise confirmed. Finally, BOG's motion to vacate the Arbitrator's Award of $155,000 to Delta, DePasquale's subcontractor, is denied and that aspect of the Award is confirmed. All other provisions of the Arbitrator's Award as to miscellaneous damages, which BOG does not challenge in its motion to vacate, are confirmed.
Counsel for the parties should confer and submit to this Court forthwith for entry an agreed upon form of order and judgment that is reflective of this Decision.
[1] See also Town of Coventry v. Turco, 574 A.2d 143, 146 (R.I. 1990) (deciding that arbitrators had the authority to interpret the contract but did not have the power and authority to rewrite it).
[2] See also R.I. Brotherhood of Correctional Officers v. State Dept.of Corrections, 707 A.2d 1229, 1234 (R.I. 1998) (if an arbitration award does not draw its essence from the contract or is not based upon a "passibly plausible interpretation thereof, a court may determine that the arbitrator manifestly disregarded a contractual provision or reached an irrational result and thereby exceeded his or her authority");Town of Coventry v. Turco, 574 A.2d 146 (R.I. 1990) (holding that, "as long as an arbitrator's award draws its essence from the contract and is based upon a passably plausible interpretation of the contract, it is within the arbitrator's authority and [judicial] review must end") (quoting Jacinto v. Egan, 120 R.I. 907, 912, 391 A.2d 1173, 1176
(1978)); Burns v. Segerson, 122 R.I. 123, 131, 404 A.2d 500, 504 (R.I. 1979) (holding that, "absent a manifest disregard of the contractual provisions, or a completely irrational result, the courts have no authority to vacate the arbitrator's award").
[3] In Coventry Teachers' Alliance, the teachers' alliance appealed from a Superior Court judgment vacating an arbitration award made pursuant to the terms of a collective bargaining agreement between the Coventry School Committee and the union. 417 A.2d at 887. The alliance had filed a grievance alleging that the school committee had violated portions of the agreement that related to classroom size, resulting in overcrowded academic classes. Id. When the school authorities rejected the grievance, the alliance filed a demand for arbitration. Id. The arbitration panel found in favor of the alliance, but the Superior Court vacated the portion of the award that related to physical education instructors because "in [its] judgment, academic classes do not include gymnasium classes." Id. at 887-88. On appeal by the alliance, the school committee argued that the arbitrators exceeded their powers by ruling on an issue not submitted for arbitration. Id. at 888. When the Supreme Court examined the record, it found that the award clearly conformed to the submission by the parties and, therefore, vacated the judgment of the Superior Court. Id. at 888-89; see also Bd. of Educ. of Bridgeportv. Bridgeport Educ. Asso., 377 A.2d 323, 325 (Conn. 1977) (in deciding whether arbitrators have exceeded their powers, courts need only examine the submission and the award to determine whether the award conforms to the submission).
[4] By agreement of the parties, references to CCRI and BOG are used interchangeably to refer to the same party.
[5] DePasquale argues: "CCRI and BOG . . . materially breach[ed] and repeatedly breach[ed] the following core controlling AIA 201-1997 contract provisions: Article 4, `Administration of the Contract,' Article 7, `Changes in the Work,' Article 8, `Time,' Article 9, `Payment and Completion.'" (DBR Ex. 2 at 8.) DePasquale goes on to allege further breaches by CCRI/BOG, including that of the duty of cooperation and the covenant of good faith and fair dealing. Then, beginning on page 11 of its claim and for the next several pages, DePasquale provides a detailed summary of how CCR allegedly materially breached its contract with DePasquale. Id. Not once, however, does DePasquale claim that its contract with CCRI/BOG is an adhesion contract and thus void as against public policy. In fact, DePasquale repeatedly relies on this very contract for its resulting damages. DePasquale further argues that if CCRI/BOG refuses to make payment of DePasquale's "rightful `make whole' equitable adjustment, then [DePasquale] will use arbitration to recover full make-whole breach of contract damages. . . ." Id. at 10. Additionally, DePasquale asserts that each of CCRI's material breaches "warrant prompt payment to [DePasquale] of its . . . lost profits" and "consequential damages," among other damages arising out of the contract. Id. at 31, 42.
[6] DePasquale argues, for example, that "[t]he boilerplate damagelimitations that CCRI inequitably seeks to resurrect from the breached and repudiated contract are null and void based upon CCRI's breaches and bad faith course of conduct. . . . CCRI's inequitable attempt to invokeboilerplate damage limitation clauses, that presuppose reasonable good-faith performance, is defeated by CCRI's antecedent breach of all core material contract terms." (DBR ex. 4 at 62) (emphasis added). DePasquale states further: "CCRI's prior course of conduct has invalidated boilerplate damage limitation clauses." Id. at 67 (emphasis added).
[7] See Ex. 4 at 63 ("The proven fraud in the inducement vitiates the parties' Contract of adhesion."); Ex. 4 at 67 ("[E]ven if no fraud vitiated the parties' Contract of adhesion, CCRI retains no boilerplate defenses to insulate itself from [DePasquale]'s actual resulting damages."); Ex. 4 at 70 ("[T]o the extent that the contract documents do not clearly impose a good faith requirement with respect to any damage limitations clause, then [DePasquale] argues that the contract documents . . . must be deemed to be terms in an owner-drafted contract of adhesion that are ambiguous regarding the good faith requirement," and such ambiguities must be construed in favor of DePasquale).
[8] See E.I. DuPont de Nemours Co. v. Local 900 of the Int'lChemical Workers Union, 968 F.2d 456, 458-59 (5th Cir. 1992) (holding that an arbitrator exceeded his authority when he found just cause to discharge employees but nevertheless fashioned a remedy other than discharge despite the fact that the parties' submission limited his authority to fashion an alternative remedy only in the event he found no just cause for discharge).
[9] In Feibelman, the plaintiff also argued, on appeal, that the trial justice erred in vacating the portion of an arbitration award that terminated the non-competition provision of an asset-purchase agreement on the basis that the arbitrator failed to explain the reasons for his decision or state that the non-competition provision was proscribed by law, and not, as the plaintiff suggested, because the arbitrator lacked the authority to invalidate that clause. Id. at 345. The Court agreed and emphasized that an arbitrator is not required to set forth the reasons for an award or disclose findings of fact or conclusions of law on which that award is based. Id. In contrast, in the case at bar, BOG did not raise the lack of detailed findings by the Arbitrator as an issue on appeal. Even if it had, however, this Court finds sufficient evidence in the record before it to review the question of whether the Arbitrator exceeded his powers in rendering his award.
[10] In Apache Bohai Corp. LDC v. Texaco China BV, 480 F.3d 397, 402
(5th Cir. 2007) — another case relied on by DePasquale — the Court upheld an arbitration award invalidating a damage limitation clause on the basis that the agreement's arbitration clause was broadly worded to encompass "all disputes," including those arguably falling within the scope of the damages limitation clause. The arbitration award in that case, as inFeibelman, involved the power of an arbitrator to invalidate a clause within the contract, not the power to void contract as a whole. While the Court's analyses in both cases are instructive, the underlying facts and legal issues are clearly distinguishable from those before this Court and do not demand the same outcome.
[11] In its motion, BOG also seems to suggest that the Arbitrator's award of consequential damages to DePasquale manifestly disregarded the law. In addition to the grounds for vacating an award already discussed, this Court may vacate an award if an arbitrator "manifestly disregard[s] the law." John Rocchio Corp. v. Town of Coventry, 919 A.2d 418, 419
(R.I. 2007) (citing Metropolitan Property and Casualty Insurance v.Barry, 892 A.2d 915, 918 (R.I. 2006)). A manifest disregard of the law requires "something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand or apply the law."Purvis Systems, Inc. v. American Systems Corp., 788 A.2d 1112, 1115
(R.I. 2002). A manifest disregard of the law can be found, however, "when arbitrators understand and correctly state the law, but proceed to disregard the same." Id. (internal quotations omitted). While a review by this Court as to whether the Arbitrator manifestly disregarded the law in rendering the Award would produce the same result as does an analysis of whether he exceeded his powers, this Court believes that the stronger and more convincing basis for vacating the Arbitrator's Award rests on the ground that he exceeded his powers in rendering his decision for the reasons discussed herein.
[12] Even if the Arbitrator was not aware of the status of Rhode Island law with respect to a contractual damage limitation or liquidated damages provision, before the Arbitrator rendered his decision, both BOG and DePasquale referred to and agreed with statement of the law in their Post-Hearing Briefs. The parties thus put the Arbitrator on notice as to the relevant law in their memoranda.
[13] Although DePasquale cites Westminster Construction Corp. v. PPGIndustries, Inc., 119 R.I. 205, 209, 376 A.2d 708, 710 (1977), for the proposition that an arbitrator is not required to set forth reasons for an award or disclose findings of fact or conclusions of law on which that award is based, that case involved G.L. 1956 § 10-3-10, not § 37-16-2 of the PWAA. This is an important distinction because as the Court in that case explained, the only requirement of an arbitrator when rendering a decision pursuant to § 10-3-10 is that the "award must be in writing and must be signed by the arbitrators or by a majority of them."Id. at 210, 376 A.2d at 711. Accordingly, the Court held that the award in that case could not be faulted for failing to include detailed findings or a statement of reasons. Id.
Unlike § 10-3-10, however, the relevant part of § 37-16-2 of the PWAA imposes a stricter requirement on arbitrators: "The award shall be in writing and shall be signed by a majority of the arbitrators. It shall be executed in the manner required by law. The arbitrator shall provide a written explanation of the reasoning for the award." (Emphasis added).
It is true that our Supreme Court in Aetna Bridge Co. v. StateDepartment of Transportation, a case involving the PWAA, found no fault with the arbitrator's two-sentence decision, explaining that "arbitrators are under no obligation to set out reasons for their award, their findings of fact or their conclusions of law on which an award is premised." 795 A.2d 517, 523 n. 11 (R.I. 2002). The Court in Aetna Bridge
cited to State Department of Mental Health, Retardation and Hospitals v.Rhode Island Council 94, 692 A.2d 318, 322 n. 12 (R.I. 1997) to support this proposition. The Supreme Court's decision in State Department ofMental Health, Retardation and Hospitals, however, did not involve the PWAA; rather, it involved § 28-9-16, entitled, "Arbitration of Labor Controversies." Id. at 321-22. Section 28-9-16 reads:
Prerequisites to enforceability of award. — To entitle the award to be enforced, as prescribed in this chapter, it must be in writing, within the time limited in the submission or contract, if any, subscribed by the arbitrator or arbitrators making it, and either filed in the office of the clerk of the court having jurisdiction as provided in § 28-9-14
or delivered to one of the parties or his or her attorney. (Emphasis added). Thus, the only requirement under § 28-9-16, like § 10-3-10, is that the award be in writing.
In contrast to Aetna Bridge Co., in City of Cranston v. Hall, the Supreme Court held that "an arbitrator's award, at least where the evidence was conflicting, should be factual as well as conclusional, should contain a statement of the reasons and grounds upon which it is predicated, and should point to the evidence upon which the ultimate findings rest." 116 R.I. 183, 187, 354 A.2d 415, 418 (1976). The arbitration board in that case was convened under the Fire Fighters' Arbitration Act, § 28-9-9.1-9(c), which requires that the board "shall make written findings and a written opinion upon the issues presented."Id. at 184, 187, 354 A.2d at 416, 418 (emphasis added).
This Court is of the view that the pertinent language of § 37-16-2 of the PWAA, with its stricter requirement for arbitration awards, more closely mirrors that of the Firefighters' Arbitration Act, § 28-9-9.1-9(c), cited in City of Cranston v. Hall than that of the statute entitled "Arbitration of Labor Controversies," § 28-9-16, upon which the Court in Aetna Bridge relied. Although BOG does not raise this issue in its motion to vacate, this Court believes that the Arbitrator's failure to comply with the requirements of the PWAA, to which he cites in his Award, is worthy of mention as another example of how he exceeded his powers. It also provides a basis to conclude that the Arbitrator manifestly disregarded the law. See Purvis Systems, Inc. v. AmericanSystems Corp., 788 A.2d 112, 115 (R.I. 2002). Had he correctly stated the law in his decision, as required by § 37-16-2 of the PWAA and as cited by the parties in their Post-Hearing Briefs, it necessarily follows that he would have had to have manifestly "disregard[ed] the same" in reaching his decision. Id. (a manifest disregard of the law exists "when arbitrators understand and correctly state the law, but proceed to disregard the same").
[14] See also Salo Landscape Construction Co. v. Liberty ElectricCo., 119 R.I. 269, 274, 376 A.2d 1379, 1382 (R.I. 1977) (holding that non-payment of an installment due may justify the contractor in refusing to continue the work and in bringing an action on the contract for damages for reasonable compensation for the work done).
[15] See also Citizens for Preservation of Waterman Lake v. Davis, 1979 WL 200294, at *13 (R.I.Super. 1979) ("[I]t is our public policy to enforce contracts freely entered into which do not clearly contravene some positive law or rule of public policy. Because the right to contract is one of every individual's civil rights, the usual and most important function of courts in this regard is to enforce and maintain contracts, as opposed to invalidating them.").
[16] DePasquale requested additional damages in the form of attorney's fees on the basis of BOG's alleged fraud and bad faith. These damages are not before this Court, however, since the Arbitrator made no finding of such conduct on the part of BOG, and DePasquale did not preserve this issue for review.
[17] In In re D. Wilson Construction Co., 196 S.W.3d 744, 777 n. 1 (Tex. 2006), the Court explained that the construction contract at issue in that case, like the one here, as well as the general conditions it incorporated by reference, are published by The American Institute of Architects and commonly accepted as standard documents in the construction industry:
 Among other things, the AIA publishes industry standard documents for design and construction projects. . . . Document A201 is frequently adopted by reference into a variety of other agreements . . . to establish a common basis for the primary and secondary relationships on the typical construction project.
Id. (quoting http://www.aia.org).
[18] As the Seventh Circuit succinctly held: "No contract, no power."Sphere Drake Ins. Ltd., 256 F.3d at 591); see also Burden v. Check IntoCash of Kentucky, LLC, 267 F.3d 483, 489 (6th Cir. 2001) (citing SphereDrake Ins. Ltd. and explaining that an allegation of a void contract raises the question of whether an arbitrator has any power at all).
Moreover, it is noteworthy that, in its Proposed Form of Award, DePasquale alleged that BOG fraudulently induced it to perform the contract by wrongfully withholding knowledge regarding the substandard preparation of the contract design documents. (See Ex. 3 at ¶ 2.) Even if the Arbitrator had found that BOG acted fraudulently in its dealings with DePasquale, fraud in the inducement does not negate the fact that the parties actually reached an agreement, see Sphere Drake Ins.Limited, 256 F.3d at 590, and, therefore, would not have rendered the contract void as a matter of law, but merely voidable. Restatement(Second) of Contracts § 164(1), § 7 cmt. b (1981).
[19] Although it appears that BOG asserts an alternative basis by which this Court could vacate the Arbitration Award — that the Arbitrator exceeded his powers by awarding consequential damages in manifest disregard of the contract language and by failing to apportion contract and consequential damages in that Award — this Court does not need to reach these issues because: (1) it has vacated the provision of the Award that is based on the Arbitrator's decision to improperly void the entire contract, namely, the award of damages in the amount of $3,158,708 to DePasquale; and (2) it has confirmed the Arbitrator's alternative award of $327,000 in contract damages to DePasquale that he rendered in the event that this Court rejected his decision to void the contract and award DePasquale damages in the amount of $3,158,708.
[20] The cases cited by DePasquale on this issue in its motion for confirmation of the Arbitrator's Award do not squarely address attorney's fees and/or sanctions. In John Rocchio Corp., the arbitrator added prejudgment interest to its award in favor of the plaintiff and against the Town. 919 A.2d at 418. The Superior Court confirmed the award and the Town appealed on the basis that the arbitrator exceeded his authority in awarding prejudgment interest against it. Id. The Supreme Court affirmed the judgment of the Superior Court, finding that the Town did not suggest a ground enumerated under the applicable statute that would warrant the vacation of the award of prejudgment interest by the arbitrator. In that case, however, the arbitrator added prejudgment interest to his award, as authorized by law. Id. The prejudgment interest was not a sanction later imposed by the Court against the Town for bringing a frivolous lawsuit.
DePasquale next cites Ricci v. Marandola, in which the Court affirmed the judgment of the Superior Court that confirmed the arbitrator's award. 800 A.2d 401, 404-05 (R.I. 2002). While the Court found that defendant had failed to meet his burden of proving that the arbitrator exceeded his authority, the subject of attorney's fees or sanctions was not even an issue in the case nor did the Court address it.
Similarly, in Westcott Construction Corp. v. City of Cranston, also cited by DePasquale, a contractor moved to vacate an arbitration award which awarded the contractor damages from the subcontractor after the subcontractor was found responsible for delay. 586 A.2d 542 (R.I. 1991). The Superior Court confirmed the award and the Supreme Court, on appeal, affirmed, holding that the contractor did not demonstrate how the arbitrators manifestly disregarded any contractual provision or otherwise establish that the award was outside their authority to fashion. Id. at 543. At no point did the Court discuss attorney's fees or sanctions to be imposed on any of the parties.
[21] The preamble provides, in pertinent part, as follows:
 Purpose. — (a) It is declared that both the state and its municipalities and their respective various agencies possess a tremendous power in their ability to affect the individuals and businesses they regulate or otherwise affect directly. The legislature further finds that the abilities of agencies to determine benefits, impose fines, suspend or revoke licenses, or to compel or restrict activities imposes a great, and to a certain extent, unfair, burden upon individuals and small businesses in particular. The legislature further finds that this situation often tempts state agencies to proceed against individuals or small businesses which are least able to contest the agency's actions, and that often results in actions other than those which are in the best interest of the public. (b) The legislature further finds that by contesting an unjust agency action and prevailing, the individual or small business often performs an important service to the public because it compels the agency to enforce the laws of this state and respective municipalities as they were written by the elected representatives of this state or the respective municipalities. Therefore, in order to encourage individuals and small businesses to contest unjust actions by the state and/or municipal agencies, the legislature hereby declares that the financial burden borne by these individuals and small businesses should be, in all fairness, subject to state and/or municipal reimbursement of reasonable litigation expenses when the individual or small business prevails in contesting an agency action, which was without substantial justification.
Section 42-92-1.
[22] Section 9-21-8, entitled "Judgments, Orders, and Decrees," states: "Every judgment for money shall draw interest at the rate of twelve percent (12%) per annum to the time of its discharge."
[23] In the alternative, DePasquale requests that the Court declare that Prompt Payment Act interest due on the contract payment amounts should run either from September 30, 2005 or from the date of the Arbitrator's Award, November 2, 2007, to date, pursuant to § 42-11.1-6, as overdue contract payments wrongfully withheld from DePasquale and its subcontractors. As BOG does not object to the application of the pre-judgment interest statute, § 9-21-8, this Court does not need to address DePasquale's alternative argument as to whether § 42-11.1-6
applies to this case.
[24] Additionally, although BOG does not raise the issue of its entitlement to liquidated damages in its motion to vacate — it argues that the Arbitrator exceeded his power when he invalidated the contract based on the presence of the liquidated damages clause — it becomes important for this Court to state for the record that, despite this Court's decision to vacate that portion of the Arbitration Award that renders the contract void, thereby reinstating the agreement and its provisions, BOG is nonetheless not entitled to liquidated damages. The Arbitrator found that BOG purported to charge DePasquale liquidated damages for days on which DePasquale was performing added work that was not agreed upon or contemplated by the parties nor called for by the contract. This Court, therefore, confirms the portion of the Arbitrator's Award denying BOG's claim for liquidated damages. *Page 1