*Hurley, Moriarty & Connly, Walter V. Moriarty, Samuel Fitch,* of the Massachusetts Bar, for respondent John Hancock Mutual Life Insurance Company.

*James E. Flannery, Leonard B. Boudin,* of the New York Bar, for intervening respondents.

PSATY & FUHRMAN, INC. *vs.* THE HOUSING AUTHORITY OF
THE CITY OF PROVIDENCE, RHODE ISLAND.

THE HOUSING AUTHORITY OF THE CITY OF PROVIDENCE,

RHODE ISLAND *vs.* PSATY & FUHRMAN, INC.

AUGUST 16, 1949.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

Capotosto, J. These are cross actions in assumpsit which were tried together in the superior court without a jury. Hereinafter Psaty & Fuhrman, Inc., a New York corporation, will be referred to as the contractor, and The Housing Authority of the City of Providence, Rhode Island, a public body organized under the laws of this state, as the Authority. The trial justice rendered a decision for the plaintiff contractor in the sum of $88,921.21, which included $10,921.67 as interest from the date of its writ, and for the plaintiff Authority in the sum of $75,600. Only the contractor has duly prosecuted a bill of exceptions in each case, thus bringing before us its exceptions to the decision of the superior court sustaining the Authority's demurrer to counts 3, 4 and 5 of its declaration, to the above-mentioned decisions of the trial justice, and to numerous rulings on evidence during the trial.

The matters in dispute stem from a written contract for the construction of Roger Williams Homes in the city of Providence, an extensive low rent housing development carried out with federal aid. The project, which covered an area of about twenty-two acres, involved the demolition of some 190 existing buildings and the substitution therefor of 28 multiple dwellings with a total of 744 units, together with a power plant and an administration building.

The Authority advertised for bids and the contractor was the successful bidder. On June 23, 1941 the parties entered

into a contract whereby the contractor undertook to carry out its terms for the sum of $2,620,000 in accordance with the specifications, drawings and addenda designated "Specification For Construction U.S.H.A.—Aided Development R.I. 1-2 Roger Williams Homes Providence, R. I."

The following provisions of the contract are important. "Article 2. Time Of Completion: The Contractor shall commence work under this contract on a date to be specified in a written order of the Local Authority and shall fully complete all work thereunder within the number of consecutive calendar days enumerated in Section 14 of Instructions to Bidders." That section requires that the construction work be completed in 300 days from the date of said order, and that work on lawns and planting be completed in 200 additional days thereafter.

Article 4, entitled Liquidated Damages, provides: "As actual damages for delay in completion are impossible of determination, the Contractor and his sureties shall be liable for and shall pay to the Local Authority the sum stated in Section 15 of Instructions to Bidders, as fixed, agreed and liquidated damages for each calendar day of delay (not beyond the control of the Contractor) until the work is completed or accepted." Section 15 of the instructions fixes such damages at $250 a day as to the construction work and $25 a day as to the landscaping.

The following provision, hereinafter called the "no damage" clause, appears in paragraph 12 of the general conditions: "No payment or compensation of any kind shall be made to the Contractor for damages because of hindrance or delay from any cause in the progress of the work, whether such delays be avoidable or unavoidable." The contractor could, however, obtain an extension of time upon certain conditions not necessary to mention here.

A brief reference to the pleadings in the two cases is necessary. The declaration in the contractor's case originally consisted of eight special counts. Counts 1, 2, 6, 7 and 8 are framed on the theory that the Authority *in bad*

*faith* hindered or delayed the contractor in its work and ultimately refused to pay the balance of the contract price. Counts 3, 4 and 5 allege in substance that the Authority *unreasonably* hindered or delayed the contractor in its performance of the contract. The Authority demurred to the three counts last mentioned on the ground that it was not liable for mere delay. Resting his decision squarely on the no damage clause of the contract, the trial justice sustained the demurrer holding that the contractor was not entitled to recover for any delay or hindrance caused by the Authority "except those caused by fraud, in bad faith, or with malicious intent to cause damage." Thereafter the contractor amended count 5 by alleging that the Authority acted with fraudulent intent. The contractor's case finally went to trial on the Authority's plea of the general issue to counts 1, 2, 5, 6, 7 and 8 as above summarized.

The declaration in the case of the Authority is in three counts. Count 1 alleges nonperformance of the contract; count 2 alleges omitted, unfinished or defective work and makes specific claim for liquidated damages for delay; and count 3 contains the common counts. The contractor pleaded the general issue to all three counts and also filed special pleas to counts 1 and 2, which pleas in effect admitted the delays but excused them on the ground that they were due to the actions of the Authority or to governmental interference, or to causes beyond its control. This case went to trial on the issues thus drawn.

The contractor's first exception is to the decision of the trial justice sustaining the demurrer to counts 3, 4 and 5 of its declaration. Under this exception it contends that it was entitled to recover damages for delay caused by the arbitrary or unreasonable conduct of the Authority. In other words, its contention is that the no damage clause of the contract did not mean that it could recover only for such delays and hindrances that were due to fraud, bad faith or malicious intent on the part of the Authority, as the trial justice ruled in sustaining the demurrer.

The contractor apparently realizes that the no damage clause is of serious import and therefore seeks to minimize its force and effect by giving it practically no meaning. Although it refers to that clause, it argues its contention in connection therewith as if it were nonexistent. No useful purpose will be served by the contractor's reliance in the circumstances on general propositions of law which, conceding their soundness in the ordinary case, do not control the fundamental question at issue here. There is no doubt that ordinarily if one exacts a promise from another to perform an act the law implies a counter promise against arbitrary or unreasonable conduct on the part of the promisee. The following cases, among others, upon which the contractor relies plainly and properly support such view: *Marcaccio, Inc.* v. *Santurri,* 51 R. I. 440; *Danforth & Armstrong* v. *Tennessee & Coosa R. R.,* 93 Ala. 614; *People ex rel.* v. *Craig,* 232 N. Y. 125; *Rogers* v. *United States,* 99 Ct. Cl. 393. But these cases are clearly distinguishable in their facts from the instant cases.

The no damage clause in this contract expressly states that the contractor shall not recover damages because of hindrance or delay from any cause in the progress of the work "whether such delays be avoidable or unavoidable." The language of this provision, though broad in scope, is not ambiguous. As the contract provides for an extension of time if requested by the contractor, it is obvious that the object of the clause was to protect the Authority in an undertaking of such magnitude against the vexatious question, in perhaps innumerable instances, whether any particular delay could have been reasonably avoided by the Authority. Had there been no such provision in the contract, the Authority would have been liable on the principle of an implied covenant if unreasonable delay were proven, that is, delay that might reasonably have been avoided in carrying out its part of the contract. Most of the cases upon which the contractor relies to support its contention that the superior court erred

in sustaining the demurrer to counts 3, 4 and 5 of the declaration proceed on this principle. Illustrative of those cases are the following: *United States* v. *Peck*, 102 U. S. 64; *Danforth & Armstrong* v. *Tennessee & Coosa R. R., supra; McFarland* v. *Welch*, 48 Mont. 196; *Patterson* v. *Meyerhofer*, 204 N. Y. 96.

The contractor in effect argues that the clause under consideration means that the Authority is excusable for reasonable delay only. This construction of the no damage clause would subject the Authority to the inquiry in all instances of delay whether a reasonable person would have acted differently, thus raising the very question that the clause intended to avoid. In the absence of any claim of concealment, misrepresentation, or fraud, the contractor by such construction of the no damage clause cannot render meaningless an express condition of the contract which it knowingly and freely accepted. As was observed by the supreme court in *Wells Bros. Co.* v. *United States*, 254 U. S. 83, at page 87: "Men who take million-dollar contracts for Government buildings are neither unsophisticated nor careless."

The parties to a contract are free to agree upon any terms that are not illegal. No damage clauses similar to the one under consideration, which are most frequently found in construction contracts especially when they relate to public improvements, are not ordinarily in violation of law. We concede that such a clause if unambiguous calls for strict application but it cannot be treated as meaningless and futile, as the contractor attempts to do in the instant cases. See *Curry* v. *Olmstead*, 26 R. I. 462. If a party to a contract with such a clause acts honestly within the fair and legal import of its terms, he cannot be deprived of the benefit thereof unless his conduct indicates bad faith or some other tortious intent, as every contract implies fair dealing between the parties. When viewed objectively by persons not in interest the conduct of a party under a no damage clause similar to the one in the instant cases may

seem unreasonable or arbitrary, and yet, as the trial justice apparently believed, such conduct in the circumstances here was nothing more than the honest exercise of reasonable caution.

In the instant cases the trial justice in his decision on the demurrer, with which we agree, recognized and applied those principles of law. The effect of his decision was to differentiate between acts of the Authority that were inherently honest, even though it was possible for others to consider them unreasonable or arbitrary, and those that might indicate a tortious intent to injure the contractor. In the absence of a request by the contractor for an extension of time because of delay allegedly resulting from any act of the Authority, as it had a right to demand under the contract, the question whether the contractor was entitled to damages for delay depended upon the nature of the evidence.

The great weight of authority supports the view that we have expressed. *Wells Bros. Co.* v. *United States, supra; Wood* v. *United States,* 258 U. S. 120; *Merchants' Loan and Trust Co.* v. *United States,* 40 Ct. Cl. 117; *Marsch* v. *Southern New England R. R.,* 230 Mass. 483; *Hosmer, Inc.* v. *Commonwealth,* 302 Mass. 495; *Coleman Bros. Corp.* v. *Commonwealth,* 307 Mass. 205; *Christhilf* v. *Baltimore,* 152 Md. 204; *Manerud* v. *City of Eugene,* 62 Ore. 196; *Ericksen* v. *Edmonds School District No.* 15, 13 Wash. 2d 398; *Goss* v. *Northern Pacific Hospital Ass'n,* 50 Wash. 236; *Hensen* v. *Covell,* 218 Cal. 622; *Mack* v. *State,* 202 N. Y. S. 344. When closely read, the following cases upon which the contractor strongly relies in support of its contention are not in conflict with the general trend of authority. *Mynard* v. *Syracuse, Binghamton & N. Y. R. R.,* 71 N. Y. 180; *Wilson & English Construction Co.* v. *New York Central R. R.,* 240 App. Div. 479; *Rogers* v. *United States, supra.* The contractor's exception to the sustaining of the demurrer to counts 3, 4 and 5 of its declaration is therefore overruled.

The trial of the instant cases extended over many days. The highly conflicting lay and expert evidence was so complex, extensive, and irreconcilable that we cannot refer thereto with any particularity in this opinion. However, we have examined the evidence in so far as pertinent to the issues before us in the light and with the assistance of voluminous briefs by the parties wherein the material evidence upon which they respectively rely was comprehensively set forth. Such examination disclosed no instance of persuasive force indicating that the contractor was prevented from presenting evidence deemed by it material on any of the substantial issues in either case.

Considering the length of the trial and the complexity of the evidence it is understandable that many rulings on evidence were made the subject of exceptions. It is well settled, however, that unless any such ruling is prejudicial the exception thereto will not be sustained by this court. We have examined all the rulings on evidence about which the contractor complains and we find them either correct or not prejudicial. All exceptions pertaining thereto are overruled.

The decision of the trial justice on the merits of these cases comes to us in the form of an exhaustive rescript wherein he carefully reviews the evidence. Even though there be disagreement with his conclusions, the rescript nevertheless gives the parties and this court the benefit of his considered judgment on all material matters in dispute. We summarize his findings as follows. In the case of the contractor against the Authority he found: first, that the contractor was not entitled to the full unpaid balance of $178,557.04 under the contract because of omitted, unfinished or defective work; secondly, that the Authority should be compensated for such omissions and deficiencies by credits in the total sum of $100,557.50; and thirdly, that since the evidence failed to establish that the Authority was guilty of any tortious conduct, the contractor was not entitled to damages for delay because of the no dam-

age clause of the contract. On the basis of these findings he rendered a decision in favor of the contractor for $88,921.21 which included interest from the date of the writ, September 23, 1943.

In the case of the Authority against the contractor he found that the delay in completing the work within the specified time was due wholly to the fault of the contractor. Applying to such finding the liquidated damage provision of the contract he entered a decision for the Authority in the total sum of $75,600, which represented 277 days at $250 a day, or $69,250, for delay in the construction work, and 254 days at $25 a day, or $6,350, for delay in the landscaping.

It must be obvious that we cannot refer to the conflicting evidence in the record before us with any degree of particularity. In order to keep this opinion within reasonable limits, necessity requires that the conclusions from our examination of the evidence in connection with the contractor's contentions be expressed in broad and summary language. Furthermore, it is well settled that the findings of fact by a trial justice on conflicting evidence will not be disturbed by this court unless clearly wrong. Hereinafter whenever we disagree with the trial justice on any question of fact, it will be understood without unnecessary repetition that we find him clearly wrong in those instances.

The contractor's contention that the trial justice failed to give its evidence due consideration is without merit. A trial justice cannot be expected to mention in a rescript every bit of evidence that a party may consider important from his particular point of view. From our examination of the transcript it is our judgment that in the instant cases the trial justice did not overlook or misconceive the material evidence on any pertinent issue.

The contractor next contends that the trial justice erred in denying it damages for delay in its case against the Authority. It is evident that shortly after the contract

was executed and more so as the work progressed both the contractor and the Authority were confronted with increasing difficulties due to war conditions. This undoubtedly led the Authority to proceed with caution whenever the contractor asked for substitution of material or whenever misunderstandings arose between them over the plans, working drawings, character of the work, and other matters not necessary to mention here. The exercise of caution in self-protection by the Authority against the contractor's proposals for changes in the specifications during a period of growing general instability cannot by mere allegation be turned into a charge of malicious and tortious conduct.

The contractor was no novice in the construction field. With full knowledge of all circumstances and conditions it saw fit to accept a contract of such magnitude at a time when danger as to the availability of both material and labor was either known or reasonably to be apprehended. The natural inference is that it took all such matters into consideration when it fixed the amount of the bid which was submitted to and accepted by the Authority. If later the contractor encountered difficulties in the matter of proper materials and competent subcontractors, we cannot say on the conflicting evidence of record that the trial justice was clearly wrong in denying it damages for delay.

The contractor further contends that the award of credits to the Authority for omitted, unfinished or defective work is excessive. We have examined the evidence pertaining to the matter of credits and applying the rule hereinbefore stated we find modification necessary in the following instances. Item 1: the credit of $30,817.08 in the matter of bituminous surfacing is excessive by $5,142.73, as the Authority actually paid $25,674.35 for that work; and item 2: the credit of $285 for broken walks is excluded as it bears the earmark of unintentional duplication. The total of these items is $5,427.73, which reduces the amount of credits to the Authority from $100,557.50 to $95,129.77.

In the case of the Authority against the contractor we find merit only in part of the latter's contention that the provision of the contract for liquidated damages is in effect the imposition of a penalty and therefore unenforceable. In order to avoid misunderstanding we here observe that in this case the no damage clause of the contract is without force and effect in determining the question under consideration. That clause gave the Authority a defense to the contractor's claim of damages for delay, but it cannot be used as a springboard by the Authority to recover such damages from the contractor. Furthermore, it is generally held that a provision for liquidated damages for delay in the performance of a contract will be enforced provided the delay is not due in whole or in part to the fault of the party claiming the benefit of such provision. In other words, where delays are occasioned by mutual defaults the court will not ordinarily attempt to apportion the damages. See 25 C.J.S. Damages, §115 c, p. 697. The question as to which party is responsible for delay as bearing on the right to liquidated damages is, on a conflict in the evidence, a question of fact for determination by the trier of the facts. Where there are a number of delays which are separate and distinct from each other, then the party without fault in any such instance is in our judgment entitled to recover liquidated damages for delay in any one or more of those instances.

Speaking generally, the measure of damages is such sum as will reasonably compensate the person injured for the loss sustained. In building contracts the loss resulting from delay in performance ordinarily is the rental value or the value of the use of the property, which varies according to the circumstances in each case. If such damages are uncertain in nature or amount, or are difficult of ascertainment, the contract may contain a provision fixing a standard, which must be fair, by which to determine the amount to be paid as compensation in the event of a breach. In the instant case we find no reason to declare

the provision for liquidated damages, as such, invalid. Provisions similar in character to the one now before us have been held valid. *Curry* v. *Olmstead, supra; Wholey Boiler Works* v. *Lewis,* 45 R. I. 441; *Wise* v. *United States,* 249 U. S. 361; *Robinson* v. *United States,* 261 U. S. 486; *Superior Steel Spring Co.* v. *New Era Spring & Specialty Co.,* 215 Mich. 594; *City of Topeka* v. *Industrial Gas Co.,* 135 Kan. 646.

The scope of the clause for liquidated damages in the case at bar is, however, too broad. As hereinbefore stated, the housing project concerned the construction of 744 units. Its primary purpose was to supply housing accommodations at reasonably low rentals. If the construction work was not completed within the time fixed in the contract, it is obvious that in a period of existing and increasing housing shortage the Authority would suffer loss of rents. It is reasonable to infer that with such a situation in mind the parties not only agreed to make time of the essence but they also stipulated that in the event of delay in the construction work the Authority's damages should be computed at the rate of $250 a day. This sum was, in effect, deemed by them as reasonable compensation for loss of rentals. We find nothing in the evidence which warrants us in concluding otherwise. It is therefore our opinion that the Authority was entitled to liquidated damages for delay in the construction work unless it contributed to the delay in some substantial manner, which question we will presently consider.

Keeping in mind the real purpose of the project, the question of whether the Authority should recover liquidated damages in the matter of landscaping presents an entirely different proposition. What the Authority principally wanted was the completion within a definite time of apartments for rental to prospective occupants, who, we believe, were eager to obtain housing accommodations irrespective of whether or not the contemplated landscaping of the premises was actually finished. In our judgment the cir-

cumstances here do not disclose a case where esthetic considerations affected in any pecuniary way the rental value or the value of the use of the property. Viewed in such a light we consider the provision for liquidated damages in the matter of landscaping as coercive in nature and therefore in substance the imposition of a penalty. The Authority was not entitled to recover liquidated damages for the contractor's delay in landscaping.

The contractor's final contention is that if the Authority could recover liquidated damages the amount awarded by the trial justice was excessive. The transcript discloses numerous instances of delay, the causes of which were treated as severable by the parties in their respective briefs. We have reviewed the evidence on the different points thus brought to our attention and find that in the main such instances are in fact distinct and severable from each other. In some of them we are unable to say that the Authority did not materially contribute in causing delay in the construction work, while in others we are of the opinion that it was without fault in the matter. It must be obvious that we cannot here discuss the evidence which has led us to such conclusions. After full consideration of the entire matter we cannot say that the trial justice's decision was clearly wrong in awarding the Authority liquidated damages to the extent of 198 days for the contractor's delay in the construction work. However, we do find such decision clearly wrong with reference to the remainder of the 277 days which was allowed to the contractor for such delay.

Although we have treated the contractor's contentions on the merits of these cases without specifically indicating the exception or group of exceptions relating thereto, nevertheless we have carefully considered all the exceptions that it has briefed or argued. In so far as this opinion modifies the decision of the trial justice in each case the contractor's exceptions relating thereto are sustained; otherwise they are overruled. All other exceptions not briefed

or argued are deemed to be waived and are therefore over-ruled.

Our conclusion in each of these cases is as follows. In the case of Psaty & Fuhrman, Inc. v. The Housing Authority of the City of Providence, Rhode Island, Ex. &c. No. 8797, the decision should be for the plaintiff in the sum of $83,427.27, with interest from the date of the writ. In the case of The Housing Authority of the City of Providence, Rhode Island v. Psaty & Fuhrman, Inc., Ex. &c. No. 8798, the decision should be for the plaintiff in the sum of $49,500 as liquidated damages for 198 days at $250 a day for delay in the construction work, with interest from January 25, 1946, the date of entry of the trial justice's decision.

Each case is remitted to the superior court with direction to enter judgment on the decision in accordance with this opinion.

*Hogan & Hogan, Laurence-J. Hogan,* for Psaty & Fuhrman, Inc.

*Letts & Quinn, Andrew P. Quinn, Richard F. Canning, Frank Licht, Arthur Falcone,* for The Housing Authority of the City of Providence, Rhode Island.