**YONKERS CONTRACTING COMPANY,**
Inc., Plaintiff,
v.
**MAINE TURNPIKE AUTHORITY,**
Defendant.
Civ. A. No. 5-41.

United States District Court
D. Maine, S. D.
Jan. 4, 1962.

**518**

Nevius, Jarvis & Pilz, New York City (by Stanley J. Norton, and Thomas B. Treacy, New York City) and Brooks Whitehouse, Roger A. Putnam, Portland, Me., for plaintiff.

Vincent L. McKusick, Portland, Me., George D. Varney, Portsmouth, N. H., Edward F. Merrill, Skowhegan, Me., for defendant.

SWEENEY, Chief Judge (Designated upon disqualification of GIGNOUX, J.)

This is an action of contract growing out of the construction by the plaintiff of approximately eleven miles of the Maine Turnpike.

■ After an informal pre-trial hearing, counsel, whom I found most cooperative in this and in every other respect, filed a 31-page stipulation of facts which the Court adopted as its then pretrial order, subject to such modification as might be necessary to prevent manifest injustice. The remaining matters were very complicated and were referred to a Master under Fed.Rules Civ.Proc. Rule 53(b), 28 U.S.C.A. for findings of fact and conclusions of law with an agreement between the parties, which was approved by the Court, that his findings of fact would be final. After lengthy hearings, the Master on June 5, 1961 filed his report. Thereafter, objections to the report were filed by each side, the plaintiff objecting to the findings and rulings on Count II and the defendant objecting to the findings and rulings on Counts I, III and V. As a matter of orderly procedure, and apparently without objection of either counsel, the Master has transposed certain items from one Count to another and has consolidated his findings and rulings of Counts III and IV. Under Rule 53(e) (2), the Court is bound to accept the Master's findings of fact unless clearly erroneous. The evidence amply supports the findings; and I, therefore, accept and adopt the Master's report and treat it as my own findings of fact.

### Defendant's Objections to the Master's Findings and Rulings on Count I

■ In this Count, which covers an amount retained by the defendant under its contract (known in the trade as a "retent"), the Master found that there is due to the plaintiff, and that the defendant admitted it by its answer, the sum of $89,215.74 which it, the defendant, stated that it had stood ready and willing to pay to the plaintiff. The last paragraph of Article 1.69 of the contract states as follows:

"The acceptance by the Contractor of payment under the said final estimate shall operate as and shall be a release to the Authority and its agents from all claims of or liability to the Contractor for anything done or furnished for or relating to the Work under the Contract, or for any

act or neglect of the Authority or any of its agents or employees, relating to or connecting with the Contract."

The Master ruled as a matter of law that had the plaintiff accepted the sum of money acknowledgedly owed by the defendant that under its contract it would have been precluded from prosecuting the other Counts that now form part of his claim. On the basis of this ruling, the Master found that the plaintiff is entitled to recover from the defendant not only the sum of $89,215.74 but also interest at the rate of 6% from March 19, 1957, the date of the commencement of this action. There can be no question that the Master's findings of fact as to the principal amount is correct, and I rule as a matter of law that the plaintiff is entitled to the interest as found by the Master. The defendant's argument that it cannot be compelled to pay interest on a retent which was authorized by the contract is not well founded as the Master found that in the face of a request by the plaintiff to the defendant to waive Article 1.69 it refused to do so, and by such refusal it is in law and equity bound to pay interest on the sum that it admittedly owed. Something that was said recently about "exchanging an apple for an orchard" might be applicable here.

### Defendant's Objections to the Master's Findings and Rulings on Count III (Consolidated, III and IV)

Under this Count, the Master found for the plaintiff in the sum of $247,595.56 as damages in the form of extra expenses and costs to the plaintiff in connection with constructing embankments, compacting the same, wasting material and blending material under arbitrary, unreasonable and capricious orders and directions of the engineer. As the basis for its contention that the Master's award of damages under this item cannot stand, the defendant relies upon Article 1.64 of the contract which reads as follows:

"Subject to the provisions of Article 1.30 entitled 'Authority of Engineer', the Engineer shall have the power, not only to alter the Plans and Specifications and to vary, increase and diminish the character, quantity and quality of, or to countermand, any Work now or hereafter required but also to require the performance of Extra Work * * *."

and upon Article 1.66 of the contract which reads as follows:

"No Extra Work shall be performed except pursuant to the written orders of the Engineer, expressly and unmistakably indicating its intention to treat the Work described therein as Extra Work. All Extra Work Orders will be approved by the Authority, and no Extra Work shall be performed pursuant to such an order unless the approval of the Authority is indicated on the place provided therefor on the Extra Work Order.

"In the absence of such an order signed by the Authority, if the Engineer shall direct, order or require any Work, whether orally or in writing, which the Contractor deems to be Extra Work, the Contractor shall nevertheless comply therewith but shall within forty-eight hours give written notice thereof to the Authority and the Engineer, stating why he deems it to be Extra Work, and shall moreover furnish to the Engineer time slips and memoranda as required by Article 1.65 entitled 'Extra Work Orders'. Said notice, time slips and memoranda are for the purpose of affording to the Authority an opportunity to verify the Contractor's claim at the time and (if it desires so to do) to cancel promptly such order, direction or requirement of the Engineer, of affording to the Engineer an opportunity of keeping an accurate record of the materials, labor and other items involved, and generally of affording to the Authority an opportunity to take such action as it may deem desirable in light of the Contractor's claims. Accordingly, the failure of the Con-

tractor to serve such notice or to furnish such time slips and memoranda shall be deemed to be a conclusive and binding determination on his part that the direction, order or requirement of the Engineer does not involve the performance of Extra Work, and shall be deemed to be a waiver by the Contractor of all claims for additional compensation or damages by reason thereof."

In M. De Matteo Construction Co. v. Maine Turnpike Authority, 184 F. Supp. 907 (D.C.Maine 1960), in passing upon a similar contention by this defendant with regards to a contract for building another part of the highway, which was adjacent to the tract under construction here involved, the Court pointed out that the defendant apparently misconceives the theory of the plaintiff's cause of action. That case as this case is based upon an alleged breach of contract by the defendant or its representatives, in that the engineer who was the defendant's delegate on the job ordered the plaintiff to do certain things which were not within the specifications of "work" under the contract so as to call for the unit price nor were they within the definition of "extra work" as defined in the contract. If it was "extra work", then the plaintiff is barred from recovery by reason of his failure to take the necessary steps of notice to the defendant. While this work was *in addition* to that required by the plans and specifications when the contract was signed, it did not differ in character from the items of work contained in the proposal. The engineer on the job simply ordered the plaintiff to do something which was not within the contract definition of "work" so as to be controlled by the unit price nor was it "extra work" within the definition of the contract. The terms "work" and "extra work" are not mutually exclusive and all-inclusive. The service for which the plaintiff here seeks recovery was ordered by the defendant's engineer, and the plaintiff is entitled to recover in *quantum meruit*. The De Matteo decision cited above has a fine collection of cases in support of this theory, and the reasoning of that decision is followed by this Court.

### Defendant's Objections to the Master's Findings and Rulings on Count V

This Count covers the plaintiff's claim for damages by reason of the failure of the defendant to provide him with borrow pits that had been indicated on a borrow pit map, prepared by the defendant and shown to the plaintiff prior to submission of the plaintiff's bid. The defendant resists this claim first on the ground that the borrow pit map was not a part of the contract and that the plan and evidence as to what part it played in the preparation of plaintiff's bid should have been excluded as in violation of the Parol Evidence Rule. The Master has found in substance that a plaintiff's engineer went to the defendant's office for the purpose of seeing a borrow pit map, was given a copy of it, went out to inspect the sites which encompassed some 16 pits, and made his calculations for its bid in part upon the basis of the costs of removal of material from the pits selected by him. He selected and made known to the defendant his choice of pits but in fact never received any of them. The plaintiff relied upon the representation of the defendant that the 16 pits shown on the borrow pit map were available, and the defendant through its agents or servants knew of such reliance; nevertheless, the pits selected by the plaintiff's engineer were never furnished and none of the pits that was furnished was even shown on the borrow pit map. The other contention of the defendant that this was "extra work" and, therefore, called upon certain procedural steps by the plaintiff is equally without merit. The plaintiff has alleged and proved a breach of contract, and the Master's findings as to the plaintiff's damages are confirmed.

### Plaintiff's Objections to the Master's Findings and Rulings on Count II

This Count covers damages which the plaintiff seeks to recover in the form of extra costs and expenses due to the

wrongful failure and refusal by the defendant to give the plaintiff timely possession of borrow pits, rights-of-way, et cetera, which alleged failure and refusal resulted in delays to the plaintiff in proceeding in a normal, orderly, efficient and reasonable manner so as to complete his contract by the December 1, 1954 terminal date.

■ The Master has found that there was no evidence offered by the plaintiff that the delays occurred as a result of the defendant's bad faith or malice but that they occurred substantially from bad weather. The period between May and November 1954 was a period of excessive rainfall, and the two hurricanes Carol and Edna occurred then. On the basis of this factual finding alone the plaintiff cannot recover. In addition to this there is a legal barrier to its recovery in Article 1.58 which provides, under the heading "Unavoidable Delays":

> "If * * * the Project be delayed, the Contractor shall have no right to nor shall he make any claim whatsoever for damages or additional compensation by reason of the delay, but he may be granted an extension of time, * * *."

■ The full benefits of this clause were afforded the contractor, and the Master's finding that he is not entitled to recover under this Count is affirmed. Similar no-damages-for-delay clauses have been interpreted in like manner. See Psaty & Fuhrman, Inc. v. Providence Housing Authority, 76 R.I. 87, 68 A.2d 32, 10 A.L.R.2d 789 (1949) and authorities therein cited, including Wells Brothers Co. of New York v. United States, 254 U.S. 83, 88, 41 S.Ct. 34, 65 L.Ed. 148 (1920). These cases seem to constitute the weight of authority although this Court recognizes that certain New York courts do not follow them.

### Conclusion of Law

On the basis of the above, the Master's report is adopted and confirmed under Rule 53(e) (2); and judgment is entered for the plaintiff in the aggregate of the amounts found by the Master with interest from the date of commencement of this action, March 19, 1957 to September 25, 1961. The latter date was stipulated by counsel for both parties to be the cut-off date for the running of interest.