DECISION
Before this Court is a Super. R. Civ. P. Rule 12(b)(6) motion to dismiss, or, in the alternative, a motion for summary judgment pursuant to Super. R. Civ. P. Rule 56, brought by the State of Rhode Island ("the State"), the State of Rhode Island Department of Environmental Management ("DEM"), and the State Properties Committee ("SPC"), (collectively, "Defendants") against Plaintiff Tidewater Realty, LLC ("Tidewater"). Following our Supreme Court opinion inTidewater Realty, LLC v. State of Rhode Island,942 A.2d 986 (R.I. 2000), Plaintiff filed a second amended complaint seeking damages from Defendants alleging breach of contract and breach of the implied covenant of good faith and fair dealing pertaining to a purchase and sale contract entered into between Plaintiff and the State, acting by and through the DEM. Defendants claim they are entitled to dismissal, or in the alternative, summary judgment based on the doctrine of sovereign immunity. *Page 2 
 I Facts and Travel
In 1911, the State, acting by and through its former State Harbor Improvement Commission, condemned waterfront commercial property located at 242 Allens Avenue in the City of Providence ("the Property"). In 2004, the State, by and through the DEM — successor in interest to the State Harbor Improvement Commission — decided to sell the Property which it deemed surplus to its needs. The Property consisted of over five acres of land and in 2004 was subject to a long-term lease ("Lease") with Promet Marine Services Corporation ("Promet") lasting until 2011, with an option to renew through 2021. Promet operated a deep water terminal on the Property which serviced large commercial vessels. After determining that the Property was surplus to its needs, the State, acting by and through the Department of Administration's Division of Purchasing, issued Requests for Proposals ("RFP") for the sale of the Property. Plaintiff, an entity formed by Promet for the purpose of acquiring title to the Property, was the successful bidder.
As land acquired by condemnation, the sale of the Property was subject to G.L. 1956 § 37-7-3. Pursuant to that statute, the City of Providence ("the City") enjoyed a statutory right, subject to a prior right in the person or persons from whom the Property was obtained, or their heirs, successors, or assigns, to purchase the Property upon the same terms and conditions as the State was willing to sell the Property to the Plaintiff. After receiving notification of the State's intention to sell the Property, the director of planning and development for the City responded, "If the property is sold to the present tenant for continuation of its use for boat repair, the city has no interest. If Promet decides it is not interested in the property, the city is interested."
Thereafter, on May 25, 2005, the Plaintiff entered into a purchase and sale contract ("PS") with the State, by and through the DEM, for the sale of the Property. The terms of the *Page 3 
PS included a purchase price of $1,026,780, a closing date of no later than June 30, 2005, and a "[t]ime is of the essence" clause. Additionally, the PS contained a "Right to Terminate" paragraph declaring
 Not withstanding anything contained herein to the contrary, this Contract is conditional upon the City of Providence waiving its right to purchase this property under the same terms and conditions contained herein in accordance with R.I. General Laws Section 37-7-3. Said required notice to City was made by certified mail on May 18, 2005. If the City of Providence chooses to exercise its rights as provided in R.I. General Laws Section 37-7-3, then this contract will terminate and be deemed null and void.
The SPC, which unanimously approved the PS in accordance with G.L. 1956 § 37-2-49, noted that the City had 30 days to respond to the letter officially notifying them of its statutory right to purchase the Property.
On June 14, 2005, the Mayor of Providence informed the State that the City intended to exercise its right to purchase the Property. Thereafter, the City Council passed a resolution authorizing the Providence Redevelopment Agency ("PRA") to acquire the Property on behalf of the City. DEM requested that the City provide a legal opinion letter on whether the PRA had the authority to purchase the Property as agent for the City. The City complied with this request and presented a legal opinion letter to the DEM which concluded that the PRA was "properly empowered to exercise the City's right to purchase granted pursuant to § 37-7-3 to acquire the Property." At a special meeting of the SPC on June 28, 2005, an attorney for the Plaintiff disputed whether the PRA had the right to purchase the Property under § 37-7-3. He indicated that Plaintiff was ready, willing and able to proceed with the purchase and submitted a letter to that effect, as well as a copy of a check for the purchase price in the amount of $1,026,780. The SPC proceeded to authorize the sale of the Property to the PRA and title was conveyed from the State to the PRA on June 30, 2005. *Page 4 
Subsequent to the conveyance of the Property to the PRA, Plaintiff filed an action in Superior Court alleging that the State had breached the PS and seeking a declaratory judgment that the conveyance to the PRA was null and void. The Superior Court granted the motion for summary judgment in favor of the Defendants and it denied Plaintiff's claim for declaratory relief. TidewaterRealty, LLC v. State of Rhode Island, 2000 WL 34601782. Plaintiff appealed the decision to the Rhode Island Supreme Court. On appeal our Supreme Court reversed the Superior Court judgment as to Count I of the first amended complaint for breach of contract.Tidewater Realty, LLC, 942 A.2d at 986. The Supreme Court held that the State breached its contract with the Plaintiff by transferring title to the PRA instead of to the City.Id. at 996. After the case was remanded to the Superior Court a Consent Order was entered requiring the PRA to transfer title to the Property to Plaintiff in exchange for the full purchase price.
Thereafter, Plaintiff filed a second amended complaint ("Complaint") against the State, DEM, and the SPC alleging breach of contract and breach of the implied covenant of fair dealing.[1]
Defendants proceeded to file the subject motion to dismiss, or, in the alternative, motion for summary judgment.
 II Standard of Review
It is well-settled in Rhode Island that the role of a Rule 12(b)(6) motion is merely to test the sufficiency of the complaint. See Toste Farm Corp. v. Hadbury, Inc.,798 A.2d 901, 905 (R.I. 2002) (quoting R.I. EmploymentSec. Alliance, Local 401, S.E.I.U., AFL-CIO v. State Dep't ofEmployment and Training, 788 A.2d 465, 467 (R.I. 2002)). "When ruling on a Rule 12(b)(6) motion, the trial justice must look no further than the complaint, assume that all allegations in the complaint are true, and resolve any doubts in a [non-movant's] favor." Id. *Page 5 
(quoting Rhode Island Affiliate, ACLU v. Bernasconi,557 A.2d 1232, 1232 (R.I. 1989)). The court should grant such a motion "only when it is clear beyond a reasonable doubt that the [non-movant] would not be entitled to relief under any set of facts that could be proven in support of the claim." Siena v. MicrosoftCorp., 796 A.2d 461, 463 (R.I. 2002).
However, a judge need not reject affidavits or other evidence presented in support of a motion to dismiss. Laurence v.Sollitto, 788 A.2d 455, 457 (R.I. 2002). Rather, when the court receives a dismissal motion which, as in the instant matter, relies on evidence outside the pleadings, "it must be treated as a motion for summary judgment under Rule 56 of the Superior Court Rules of Civil Procedure." Strynar v. Rahill,793 A.2d 206, 209 (R.I. 2002). Since matters outside the pleading have been presented to and not excluded by this Court, the motion is treated as one for summary judgment and disposed of as provided in Rule 56. Super. R. Civ. P. Rule 12(b). All parties have been given reasonable opportunity to present all materials pertinent to a Rule 56 motion. Id.
Summary judgment is proper when, after reviewing the admissible evidence in the light most favorable to the non-moving party, "no genuine issue of material fact is evident from the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, and the motion justice finds that the moving party is entitled to prevail as a matter of law."Smiler v. Napolitano, 911 A.2d 1035, 1038 (R.I. 2006) (quoting Rule 56(c)). When considering a motion for summary judgment, "the court may not pass on the weight or credibility of the evidence but must consider the affidavits and other pleadings in a light most favorable to the party opposing the motion."Lennon v. MacGregor, 423 A.2d 820, 822 (R.I. 1980). During a summary judgment proceeding, "the justice's only function is to determine whether there are any issues involving material facts."Id. (quoting Steinberg v. State,427 A.2d 338, 340 (R.I. 1981)). *Page 6 
"Therefore, summary judgment should enter `against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case * * *.'" Lavoie v.North East Knitting, Inc., 918 A.2d 225, 228 (R.I. 2007) (quotingCelotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (construing the substantially similar federal rule)).
 III Discussion
In the instant matter, Plaintiff claims it is entitled to damages for certain expenses incurred in its efforts to acquire the Property, including but not limited to rental payments made by Plaintiff to the PRA under the Lease, [2] attorneys' fees incurred litigating against the City and the PRA, as well as an award of pre-judgment interest. However, Defendants argue that they are protected by the doctrine of sovereign immunity and therefore this Court should grant summary judgment as to both counts of the Complaint. They contend that even though the State Purchases Act, G.L. 1956 § 37-2-1 et seq., allows an action to be brought against the State for breach of contract under certain limited circumstances, breach of contract for the purchase or sale of real estate, as in the instant matter, is not one of those circumstances. They maintain that although the PS is a contract and the Plaintiff may have sustained damages in relation to its breach, the statute under which the real estate transaction arose, namely G.L. 1956 § 37-7-1 et seq., does not specifically waive the State's sovereign immunity and therefore this action is precluded. Plaintiff argues that the State was engaged in a proprietary function as a landowner in the sale and transfer of the Property and therefore is not entitled to rely on a defense of sovereign immunity. Plaintiff emphasizes that the land was being sold as "surplus land" under § 37-7-3 and therefore the State was not operating or selling the condemned land to achieve a governmental function. *Page 7 
A threshold issue then becomes whether the State Purchases Act, and in particular § 37-2-49, applies to the disposal of real estate as under Chapter 7. In Rhode Island "[a] sovereign is exempt from suit, not because of any formal conception or obsolete theory, but on the logical and practical ground that there can be no legal right as against the authority that makes the law on which the right depends." Pellegrino v. Rhode Island Ethics Com'n,788 A.2d 1119 (R.I. 2002) (quoting Kawananakoa v. Polyblank,205 U.S. 349, 353, (1907)). It is well-settled that when interpreting a waiver of immunity statute, "it is presumed that the legislature did not intend to deprive the state of any part of its sovereign power unless intent to do so is clearly expressed or arises by necessary implication from statutory language."Andrade v. State, 448 A.2d 1293, 1295 (R.I. 1982). The State Purchases Act provides that "[a]ny person, firm, or corporation having a lawfully authorized written contract with the state . . . may bring an action against the state on the contract, including, but not limited to, actions either for breach of contract, enforcement of contract, or both." G.L. 1956 § 37-2-49(b). Further, § 37-2-45 states that "[t]he chief purchasing officer shall sell or otherwise dispose of all property of the state which is not needed, or has become unsuitable for public use, or would be more suitably consistent with the public interest for some other use." G.L. 1956 § 37-2-45. However, the disposal of real property "shall be subject to the approval of the state properties committee and pursuant to the provisions of chapter 7" of Title 37, Public Works and Property. Id.
Defendants claim that since G.L. 1956 § 37-7-1 et seq. does not have a provision similar to the one found in § 37-2-49(b) which allows breach of contract actions against the State, Defendants have a viable defense of sovereign immunity. However, it is well-settled that "when the language of a statute is clear and unambiguous, courts must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." Mottola v.Cirello, 789 A.2d 421, 423 (R.I. 2002) *Page 8 
(quoting Accent Store Design, Inc. v. Marathon House, Inc.,674 A.2d 1223, 1226 (R.I. 1996)). Section 37-2-49(b) allows actions to enforce any lawfully executed written contract with the State. G.L. 1956 § 37-2-49(b) (emphasis added). Additionally, § 37-2-7(5) defines a "contract" to mean "all types of agreements . . . for the purchase or disposal of supplies, services, construction, or any other item. (emphasis added). The Court notes that while real property is expressly excluded from the definition of "supplies" it does fall under the catch all phrase calling for the disposal of "any other item." G.L. 1956 § 37-2-7(24), (5). The Court also notes while Chapter 7, unlike Chapter 2, does not call for RFP, such requests were issued by the State when selling the Property. Moreover, according to § 37-2-45 "[t]he chief purchasing officer shall sell or otherwise dispose of all property of the state which is not needed, or has become unsuitable for public use, or would be more suitably consistent with the public interest for some other use." G.L. 1956 § 37-2-45 (emphasis added). The Court is satisfied that such language does not exclude the sale of real property from the purview of Chapter 2, but rather adds specific supplementary steps for such a sale contained in Chapter 7 as well as the required approval by the SPC. Id.
When determining questions of statutory construction a court "will not construe a statute to achieve meaningless or absurd results."Tidewater Realty, LLC, 942 A.2d at 992 (quotingBeaudoin v. Petit,122 R.I. 469, 476, 409 A.2d 536, 540 (1979)). This Court notes that Defendants' interpretation of § 37-2-49(b) would allow actions for breach of contract against the State on all types of agreements except those agreements concerning the disposition of real property. Further, actions could be brought to enforce lease agreements for real property but not to enforce purchase and sale agreements for the same property. Accordingly, the Court believes the interpretation urged by the Defendants would achieve an absurd result. For the foregoing *Page 9 
reasons, this Court is satisfied that § 37-7-3 should be read in conjunction with the State Purchases Act and specifically § 37-2-49. Therefore, Plaintiff's claims are not summarily barred by the doctrine of sovereign immunity and this Court denies summary judgment based on such theory.
 A Breach of Contract
In Count I of the Complaint, Plaintiff requests an award of compensatory, consequential, special, and incidental damages for additional expenses incurred in efforts to acquire the Property. The Plaintiff claims it is entitled to (i) rental payments made to the PRA under the Lease, (ii) attorneys' fees incurred litigating against the City and the PRA, and (iii) an award of pre-judgment interest. Defendants argue that Plaintiff's claim for attorneys' fees and rent it paid to PRA are without merit. They assert that all of the attorneys' fees claimed by Plaintiff as compensatory and consequential damages arise from its prosecution of the case through the Supreme Court against the City and the PRA and therefore, are inseparable and properly the Plaintiff's responsibility under the "American Rule."[3] Plaintiff counters that it is entitled to its losses and expenses caused by the State's unreasonable and wrongful delay in conveying the Property.
Plaintiff argues that it is not attempting to circumvent the American Rule regarding each party paying its own attorneys' fees but rather seeking to recover the compensatory and consequential damages it incurred as a result of Defendants' breach of the PS and the implied covenant of good faith and fair dealing. According to the Plaintiff, when a court orders specific *Page 10 
performance the closing is deemed to have consummated as of the original closing date set forth in the contract. Therefore, to equalize the delay caused by the State's failure to timely convey the Property, Plaintiff claims that it is entitled to its losses occasioned by such delay. See Bissonnette v. Hanton CityRealty Corp., 529 A2d 139, 143 (R.I. 1987). Defendants maintain that the Plaintiff is attempting to circumvent the American Rule because the court did not order specific performance in this matter. According to the Defendants, conveyance to Plaintiff was a result of the parties' negotiations after the remand by the Rhode Island Supreme Court and not a decree of specific performance.
It is true that Rhode Island adheres to the American Rule, which requires each litigant to pay its own attorneys' fees absent statutory authority or contractual liability. Moore v.Ballard, 914 A.2d 487, 489 (R.I. 2007). According to the PS, in the event that the State defaulted on its obligations, the Plaintiff had "the right to all remedies available at equity and law, including but not limited to specific performance." (Compl. Ex. 1 ¶ 13.) However, under Rhode Island law, in the context of breach of contract actions, attorneys' fees are recoverable only when the court "(1) [f]inds that there was a complete absence of a justiciable issue of either law or fact raised by the losing party; or (2) [r]enders a default judgment against the losing party." G.L. 1956 § 9-1-45; see also Ross-Simons ofWarwick, Inc. v. Baccarat, Inc.,66 F.Supp.2d 317, 330 (D.R.I. 1999), aff'd,217 F.3d 8 (1st Cir. 2000). In the instant matter, the Court did not enter a default judgment. Moreover, Defendants presented a justiciable issue as to whether, as an agent of the City, the PRA had the authority to purchase the Property.See Tidewater realty, LLC, 942 A.2d at 996;see also Bucci v. Anthony,667 A.2d 1254, 1256 (R.I. 1995) (finding that hearing justice did not abuse his discretion in refusing to award attorneys' fees to state employees since the DBR's *Page 11 
position for wage modification rested upon an arguable proposition of law). Therefore, in the instant matter, attorneys' fees are not available under the American Rule nor under § 9-1-45.
However, Plaintiff asserts it is not seeking attorneys' fees for litigating with the State but rather an accounting of costs related to the delay in the performance of the contract, namely litigation expenses to prove the enforceability of the Plaintiff's PS. According to the Defendants, Plaintiff is not entitled to an accounting between the parties because the court did not order a decree of specific performance in favor of the Plaintiff and transfer of the Property to Plaintiff was a result of the remand by the Rhode Island Supreme Court and subsequent negotiations between the parties.
Nevertheless, the granting of specific performance is appropriate when adequate compensation cannot be achieved through money damages because the item is unique and distinctive, such as land.Griffin v. Zapata, 570 A.2d 659, 661-62 (R.I. 1990). In the matter before the Court, the controversy does concern unique and distinctive real property. Additionally, it is well established that the party who wishes to obtain a remedy of specific performance must show that he or she was ready, able, and willing to perform his or her part of the contract. Yates v. Hill,761 A.2d 677, 679 (R.I. 2000). Here, the evidence reveals that on June 28, 2005 at a special meeting of the SPC, Plaintiff presented a letter to the DEM indicating its readiness to proceed with the real estate transaction and the closing. (Defs. Ex. F.) Further, attached to such letter was a copy of a check for the purchase price in the amount of $1,026,780, payable to the General Treasurer, State of Rhode Island. Moreover, the Rhode Island Supreme Court held that the conveyance of the Property to the PRA was a breach of Plaintiff's PS. Tidewater Realty, LLC,942 A.2d at 996. Although the negotiations of the parties preempted an *Page 12 
award of specific performance in this matter, the Court is satisfied that such an award would have been appropriate.
The general rule is that a plaintiff may not receive both a decree of specific performance as well as damages for breach of contract.Greensleeves, Inc. v. Smiley, 942 A.2d 284, 293 (R.I. 2007) (citing Specific Performance: Compensation or Damages Awarded Purchaser for Delay in Conveyance of Land, 7 A.L.R. 2d 1204, 1206 (1949)). However, in appropriate circumstances a court may order payment of expenses incurred by plaintiffs as a result of a defendant's delay in performance.Bissonnette, 529 A.2d at 143 (citing 7 A.L.R.2d 1204, 1206 (1949)); see also Matrix PropertiesCorp. v. TAG Investments, 644 N.W.2d 601, 605 (N.D. 2002) (finding that in an action for specific performance, a purchaser may recover damages from the seller for delay in conveying real property and the costs, if any, of recovering possession). Such compensation, in addition to a decree for specific performance is "more like an accounting between the parties than like an assessment of damages." Bissonnette, 529 A.2d at 143.
The PS entered into by the parties specified that "time is of the essence" and the closing would occur no later than June 30, 2005, unless otherwise agreed to by both Buyer and Seller. (Defs. Ex. B ¶ 2.) The transfer of the Property did not occur until after the Rhode Island Supreme Court rendered its decision and remanded to the Superior Court on March 14, 2008. Plaintiff asserts that because of such delay it was forced, for a period of years, to pay rent on the Property, and to incur the burden and significant expense of litigating against the City and PRA to obtain the Rhode Island Supreme Court ruling that the PRA did not have the authority to purchase the Property from the State. When conducting an accounting incident to specific performance, the purpose is to relate the performance back to the date specified in the contract, place the parties in the position they would have been had the contract been timely performed, *Page 13 
and offset any losses caused by the delay with money payments.Bissonnette, 529 A.2d at 143; Greensleeves, Inc.,942 A.2d at 292; see also Kissman v. Panizzi,891 So.2d 1147, 1150-51 (Fla. Dist. Ct. App. 2005) (holding that when awarding damages in an action for specific performance the court is really requiring an accounting and attempting to adjust the equities and return the parties to their relative positions at the time of closing).
Given that the transfer of property to the PRA was a breach of Plaintiff's PS and that this Court entered a Consent Order requiring the PRA to transfer title to the Plaintiff, this Court deems an accounting is appropriate to determine the losses that may have incurred as a result of the delay in conveyance of the Property to the Plaintiff. Further, the Defendants have not presented sufficient evidence that Plaintiff is not entitled to such an accounting. Therefore, this Court denies Defendants' motion for summary judgment as to Count I of the Complaint.[4]
 B Breach of the Implied Covenant of Good Faith and FairDealing
In Count II of the Complaint, Plaintiff also alleges that Defendants breached the implied covenant of good faith and fair dealing by failing to take all reasonable steps necessary to sell the Property to the Plaintiff according to the terms of the PS. Defendants move for summary judgment based on the ground that Plaintiff did not comply with the three year statute of limitations set forth the State Purchases Act. According to the Defendants, since the SPC voted to convey the property to the PRA on June 28, 2005, and the Rhode Island Supreme Court issued an opinion in this matter on March 14, 2008, the Plaintiff's second amended Complaint should have been filed on or before June 28, 2008. Given that the Plaintiff did not file such Complaint until December 18, 2008, Defendants argue that this Court should grant summary judgment as to Count II. In opposition, Plaintiff contends that its claim for breach of the covenant for good faith *Page 14 
and fair dealing arises out of the same failure by the State to timely convey the Property and therefore relates back to the date of the original pleading.
Like its Federal Rule counterpart, Super. R. Civ. P. Rule 15(c) provides a test to determine whether a properly granted amendment shall relate back to the date of the original pleading. Mainella v. Staff Builders Indus. Services, Inc.,608 A.2d 1141, 1143 (R.I. 1992). Specifically, the test under the relation back principle is "whether the amended pleading alleges a matter that arises out of the same `conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.'" Id. (quoting Super. R. Civ. P. R. 15(c)). This Court must also consider whether the opposing party had prior notice of the new claim raised by the amended pleading.Id. at 1144. Once the standards have been satisfied, the amendment will relate back for purposes of the statute of limitations and effectively replace the original complaint.Id. at 1141 (citing Gallo v. F.S. Payne Elevator Co.,588 A.2d 614 (R.I. 1991)).
Under Rule 15(c), the court focuses on "the fact situation `set forth or attempted to be set forth' in the original complaint."Manocchia v. Narragansett Capital Partners Television,658 A.2d 907, 910 (R.I. 1995) (citing O'Loughlin v. NationalRailroad Passenger Corp., 928 F.2d 24, 27 (1st Cir. 1991)). In its first amended complaint, Plaintiff alleged that "the State of Rhode Island had breached the purchase and sales agreement . . . of May 25, 2005 because it deeded the property to the PRA rather than to the `City of Providence.'" Tidewater Realty, LLC,942 A.2d at 991. The Plaintiff's amendment added a claim for breach of contract based upon a breach of the implied covenant of good faith and fair dealing. The relation back principle applies to an amendment even if such amendment "changes the theory of recovery or the type of relief sought." Manocchia,658 A.2d at 910 (citing 1 Robert Brydon Kent, Rhode IslandPractice: Rules of Civil Procedure withCommentaries § 15.6 (1969)). Here, although the second *Page 15 
amended Complaint adds a new legal theory for establishing Plaintiff's breach of contract claim, it still concerns the same breach, namely the Defendants' failure to timely convey the Property to the Plaintiff. The Court is satisfied that the first amended complaint and the second amended Complaint concern the same factual situation.
With regard to notice, Defendants claim that despite several months of discovery after the initial filing in 2005, Plaintiff failed to amend its complaint until December 2008. Plaintiff counters that its amended Complaint was not appropriate until our Supreme Court issued its opinion on March 14, 2008. Additionally, Plaintiff argues that given the procedural posture of the case and the fact that Defendants have not answered the first amended complaint or the second amended Complaint, Defendants cannot claim a risk of prejudice.
In Manocchia, our Supreme Court highlighted that when considering the application of the relation back principle, "the determining factor is whether there is notice that a new claimmight be asserted." Manocchia,658 A.2d at 910 (emphasis added). The court found that since the new claim was asserted by the same plaintiff against the same defendants and concerned the same factual situation, the defendants had fair notice. Id. Here, the new claim for breach of contract based on the implied covenant of good faith and fair dealing is also being asserted by the same Plaintiff against the same Defendants.
With respect to the same factual situation, it is well-settled that "virtually every contract in Rhode Island contains an implied covenant of good faith and fair dealing between the parties."Dovenmuehle Mortg., Inc. v. Antonelli,790 A.2d 1113, 1115 (R.I. 2002) (quoting Centerville Builders,Inc. v. Wynne, 683 A.2d 1340, 1342 (R.I. 1996). Rhode Island has adopted the covenant in order to ensure that contractual objectives are achieved. Fleet Nat'l Bank v. Liuzzo,766 F.Supp. 61, 67 (D.R.I. 1991) (quoting Ide Farm Stable,Inc. v. Cardi, 110 R.I. 735, 297 A.2d 643, 645 (1972)). *Page 16 
The covenant of good faith is regarded as a counterpromise that the promisee will act in a manner consistent with the purposes of the contract. Ross-Simons of Warwick, Inc. v. Baccarat,Inc., 66 F.Supp.2d 317, 330 (D.R.I. 1999). Therefore, claims for breach of contract and breach of the implied covenant of good faith and fair dealing are related claims. Given the related nature of such claims and that in the instant matter both relate to the same factual situation, Defendants cannot claim that they lacked notice. Therefore, this Court is satisfied that the test set forth in Mainella has been satisfied and Plaintiff's second amended Complaint relates back to the date of the original pleading. 608 A.2d at 1143. Accordingly, the Court denies summary judgment based on the running of the statute of limitations.
Turning to the merits of Count II, Defendants argue that this Court should grant summary judgment because Plaintiff's Complaint fails to state a claim. According to the Defendants, Plaintiff's Complaint contains no allegations that the Defendants acted with "bad faith or some other tortuous intent" as required by Rhode Island Supreme Court in Psaty Fuhrman v. Housing Authority ofCity of Providence, 76 R.I. 87, 93, 68 A.2d 32, 36 (1949). Plaintiff counters that it not only has made sufficient allegations to support a claimed breach of the implied covenant of good faith and fair dealing but also that the proper standard for determining such a breach is whether or not the defendants actions are free from "arbitrary or unreasonable conduct."
This Court remains mindful that virtually every contract contains an implied covenant of good faith and fair dealing between the parties and the purpose of such a covenant is so that contractual objectives may be achieved. Ide Farm Stable,Inc. v. Cardi, 110 R.I. 735, 739, 297 A.2d 643, 644-45 (1972). In the instant matter, Plaintiff has alleged that Defendants breached their duty of good faith and fair dealing by failing to take all reasonable steps necessary to sell *Page 17 
the Property to Plaintiff. Specifically, Plaintiff contends that in relying on the opinion letter of PRA's special counsel and failing to conduct their own independent legal research regarding the ability of PRA to purchase the Property, Defendants acted in an arbitrary and unreasonable manner. Under Rhode Island law, the applicable standard in determining whether one has breached the implied covenant of good faith and fair dealing is whether the actions in question are free from arbitrary or unreasonable conduct.Ross-Simons of Warwick, Inc., 66 F.Supp.2d at 329 (citingPsaty Fuhrman, Inc., 76 R.I. at 92, 68 A.2d at 35). Accordingly, Plaintiff has made sufficient allegations to support its claim.
In Baccarat, the District Court found that the defendant's conduct in terminating a retailer settlement agreement was neither arbitrary nor unreasonable. Ross-Simons of Warwick, Inc.,66 F.Supp.2d at 329. In that case, the court held that while the manufacturer had indeed breached the settlement agreement by terminating the retailer, such termination was made in good faith, and the defendant had not breached the implied covenant of good faith and fair dealing. Id. The Baccarat Court emphasized that the manufacturer's motivation for terminating the retailer was to maintain a certain brand image and the violation of the settlement agreement resulted from reliance on erroneous legal advice rather than arbitrariness. Id.
In the instant matter, the facts are substantially similar. The State Defendants had to comply with certain statutory requirements under § 37-7-3 before conveying the Property to the Plaintiff. G.L. 1956 § 37-7-3. Under such statute, the City chose to exercise its right to purchase the Property. Before proceeding with a closing on the Property, DEM indicated that it would require an opinion letter as to whether the City could purchase the Property through the PRA as its agent. (Defs. Ex. F.) Although, special counsel for PRA indicated in its opinion letter that PRA had the authority to exercise the City's right to Purchase the Property, the Rhode Island *Page 18 
Supreme Court held otherwise. Tidewater Realty, LLC,942 A.2d at 996. Similar to the defendant in Baccarat, in deciding to convey the Property to the City rather than to the Plaintiff, the State had both legal compliance issues and erroneous legal advice to consider.
However, in Baccarat, the court made a determination as to the reasonableness of the defendant's conduct after a bench trial.Ross-Simons of Warwick, Inc., 66 F.Supp.2d at 317. In the instant matter, Plaintiff's allegations focus on whether the Defendants were unreasonable in relying on the legal opinion letter presented by PRA's special counsel and failing to conduct their own independent legal research concerning the conveyance to the PRA. The Defendants have moved for summary judgment regarding the reasonableness of their actions. The Court is mindful that summary judgment is only proper when, after reviewing the admissible evidence in the light most favorable to the non-moving party, "no genuine issue of material fact is evident from the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, and the motion justice finds that the moving party is entitled to prevail as a matter of law."Smiler,911 A.2d at 1038 (quoting Super. R. Civ. P. Rule 56(c)).
After reviewing the pleadings and the admissible evidence presented to this Court, the Court is satisfied that the Defendants have not provided sufficient evidence to determine as a matter of law that their actions were reasonable. The Court also notes that whether conduct violates the duty of good faith and fair dealing is generally a question reserved for the finder of fact.See Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp.,72 F.3d 190, 199 (1st Cir. 1995) (citing E. Allan Farnsworth, Contracts § 7.17 (2d ed. 1990)); see alsoKlayman v. Judicial Watch, Inc.,628 F. Supp. 2d 112, 130-31 (D.C.C. 2009) (noting that whether particular conduct violates or is consistent with the duty of good faith and fair dealing necessarily depends upon the facts of the *Page 19 
particular case, and is ordinarily a question of fact to be determined by the jury or other finder of fact). Therefore, this Court denies summary judgment as to Count II of the Complaint.
 VI Conclusion
After due consideration of the arguments advanced by counsel at oral argument and in their memoranda, the Court finds that § 37-7-3 should be read in conjunction with the State Purchases Act and therefore Plaintiff's claims are not summarily barred by the doctrine of sovereign immunity. Further, since the transfer of property to the PRA was a breach of Plaintiff's PS and a Consent Order required the PRA to transfer title to the Plaintiff, this Court deems an accounting is appropriate to determine the losses that may have incurred as a result of the delay in conveyance of the Property to the Plaintiff. Accordingly, summary judgment is denied as to Count I of the Complaint for breach of contract. Additionally, since there are genuine issues of material in dispute regarding whether Defendants' conduct violates or is consistent with the implied covenant of duty of good faith and fair dealing, this Court denies summary judgment as to Count II of the Complaint.
Prevailing counsel may present an order consistent herewith which shall be settled after due notice to counsel of record.
[1] As a result of the Supreme Court's ruling inTidewater the City and the PRA are no longer defendants to the present action. Id.
[2] Inexplicably, Plaintiff claims it is entitled to rental payments made to the PRA under the Lease despite the fact that such Lease was not between Plaintiff and the Defendants but rather between Promet and the Defendants.
[3] The "American rule" requires "that each litigant must pay its own attorney's fees, even if the party prevails in the lawsuit."Blue Cross Blue Shield of Rhode Island v. Najarian,911 A.2d 706, 711 (R.I. 2006) (citing Black's Law Dictionary 82 (7th ed. 1999)). Nevertheless, there are exceptions to the rule under three specific circumstances: (1) pursuant to the "common fund exception," a court may award attorneys' fees to the party whose litigation efforts directly benefited others; (2) a court may also assess attorneys' fees as a sanction for willful disobedience of a court order; and (3) a court may award attorneys' fees when a party has acted in bad faith or for oppressive reasons.Chambers v. NASCO, Inc., 501 U.S. 32, 45 (1991).
[4] Perhaps in connection with an accounting, Tidewater will be able to show how it is entitled to make a claim for rentals presumptively paid to the PRA by its parent.